[Crim. No. 23258. Second Dist., Div. Two. May 28, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES E. BAKER, Defendant and Appellant.

**COUNSEL**

Albert C. S. Ramsey and Edward P. George, Jr., for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, James H. Kline and Donald F. Roeschke, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**FLEMING, J.**—Charles E. Baker, a licensed medical doctor, appeals the judgment of conviction for prescribing narcotics to persons not under his treatment for a pathology. (Former Health & Saf. Code, § 11163,[1] two counts.)

On 3 August 1971 Undercover Agents Charles Stowell and Sandra Davis visited Dr. Baker's office in Long Beach. Stowell told Dr. Baker he had "gotten loaded on codeine" and enjoyed it, and he asked for prescriptions for codeine for himself and Davis. Without making a medical examination, Dr. Baker prescribed empirin with codeine (a narcotic) for both Stowell and Davis.

On 7 September 1971 Stowell returned to Baker's office with Undercover Agent Sharyn Dalton. Earlier that day Dalton had been medically examined and found in good health. Stowell told Dr. Baker he needed more empirin with codeine, and the latter wrote him another prescription. Baker then asked Dalton what she wanted, and she also asked for empirin with codeine. Baker prepared a file for Dalton and without questioning or examining her physical condition he then wrote the prescription she had requested. Stowell paid Baker $20 for the prescriptions.

During a recess at Baker's preliminary hearing he asked to examine some of the exhibits. The court clerk later discovered that the exhibits which comprised the original prescriptions were missing. Pieces of the

---

[1] Former Health and Safety Code section 11163: "Except in the regular practice of his profession, no person shall prescribe, administer, or furnish, a narcotic to or for any person who is not under his treatment for a pathology or condition other than narcotic addiction, except as provided in this division." (See now Health & Saf. Code, § 11154.)

prescriptions were subsequently found floating in a toilet bowl in a men's room in the courthouse.

The jury found Baker guilty on charges relating to the September 7 transaction but was unable to reach a verdict on charges relating to the August 3 transaction.

Baker contends his cause was prejudiced by (1) prosecutorial misconduct, (2) admission of improper evidence, and (3) inadequate instructions; he also challenges (4) the conditions of probation.

1. *Prosecutorial Misconduct.* ■ Baker cites three portions of the record as instances of prosecutorial misconduct:

During opening argument the prosecutor stated, "Also, the defendant had previously been under scrutiny by the Department of Consumer Affairs, a man by the name of Roth, who had previously conducted an investigation of the defendant's activities. They had discussed the State Narcotic Laws—" Baker objected and moved for a mistrial on the ground that the statement implied Baker was guilty of other uncharged misconduct. The court denied the motion for mistrial, and the prosecutor continued, "Ladies and gentlemen, in use of terms, I should more accurately ascribe a function of Mr. Roth as a discussion. He was an investigator about to be leaving his appointment with the Department of Consumer Affairs. But, he had a discussion with the defendant regarding what the state law was with respect to prescribing narcotics." Then the court added, "Right. And any statement that [the prosecutor] made earlier about the defendant having been previously under investigation is to be disregarded by you."

During direct examination the prosecutor asked Agent Stowell if he understood Baker to be licensed to practice in California at that time and in 1971. Stowell responded, "I was operating under that assumption. But, I also had a parallel investigation regarding his license." Baker objected and moved for a mistrial. After the court denied the motion for mistrial the prosecutor elicited testimony that Stowell had no information and had not attempted to suggest that Baker had ever practiced medicine without a license.

Finally, Baker cites a colloquy during closing argument. "[Prosecutor]: . . . That man, the defendant in this case, despite his age, and despite how he was described, a kindly old man—the kindly killer, potential killer—[Defense Counsel]: If the Court please, your Honor, I'm going to object and ask counsel be admonished on that. THE COURT: Overruled. [Defense Counsel]: Thank you, your Honor. [Prosecutor]: To qualify

that, your Honor, addiction destroys the individual, does it not? And can lead to overdosage. So, he's a potential killer if the facts as related, on the evidence as portrayed to you by the People, if that is a fact. So that a 'kindly old man' doesn't mean a thing."

We find no prejudicial error in these three portions of the record. (*People* v. *Hamilton,* 60 Cal.2d 105, 120-121 [32 Cal.Rptr. 4, 383 P.2d 412].) The prosecution was required to prove Baker was a licensed physician and was entitled to prove he had knowledge of the narcotic laws. If proof of these facts implied other misconduct by Baker, the implication was sufficiently dispelled by the admonition given to the jury by the court and by explanatory statements and questions of the prosecutor. (*People* v. *Hernandez,* 11 Cal.App.3d 481, 491 [89 Cal.Rptr. 766].) No evidence suggests the prosecutor acted in bad faith. (*People* v. *Hayes,* 19 Cal.App. 3d 459, 470 [96 Cal.Rptr. 879].) The prosecutor's "kindly killer" remark, though overstated, in substance amounted to a comment on the evidence— which showed that Baker prescribed potentially deadly narcotics to patients without conducting a medical examination to substantiate need or uncover potential risks to the particular patient in the use of the drug. (See *People* v. *Weiss,* 50 Cal.2d 535, 555-556 [327 P.2d 527].)

2. *Admission of Evidence.* █ Baker contends the court erred in admitting evidence of the entire September 7 transaction and admitting evidence that suggested he destroyed exhibits.

In the September 7 transaction Stowell, in addition to prescriptions for empirin with codeine asked for and obtained prescriptions, for barbiturates and amphetamines. Although prescription of these drugs may have been unethical, it did not amount to a criminal violation of former Health and Safety Code section 11912, and this court so ruled in advance of trial. (*Baker* v. *Superior Court,* 24 Cal.App.3d 124 [100 Cal.Rptr. 771].) Subsequent to this ruling, the trial court in the exercise of its discretion under Evidence Code section 352 prohibited reference to these additional prescriptions in the prosecution's case-in-chief. At the trial, however, Baker testified that in prescribing narcotics he acted in good faith, that from the manner in which the undercover agents acted he believed they were in pain. Baker's testimony concealed the fact that he prescribed other drugs to the agents on September 7. On the subsequent cross-examination of Baker, the court allowed the prosecution to bring out the entire transaction, including the prescription of barbiturates and amphetamines, to establish that Baker had not been acting in good faith in treating a particular medical condition, but rather had been prescribing all kinds of drugs on demand.

Baker argues the court erred in admitting evidence of the entire transaction on cross-examination without first permitting him to reopen his direct defense in order to explain his conduct. Baker asserts that by springing this evidence on cross-examination, the prosecution unfairly made him look as though he were trying to hide the complete truth about the transaction.

We find no merit in this argument. Baker brought upon himself whatever consequences flowed from the delayed admission of the additional evidence. Evidence of the entire transaction was admissible to show the circumstances of the crime; such evidence did not become inadmissible merely because it may have established other misconduct. (*People* v. *Enos,* 34 Cal.App.3d 25, 34 [109 Cal.Rptr. 876].) In excluding the evidence from the prosecution's case-in-chief, the court explicitly left open the possibility of its subsequent admission, a possibility dependent on the defense presented by Baker. When Baker set forth his defense of good faith, the court properly permitted the prosecution to refute that defense by producing evidence of the entire transaction, evidence which, although showing other misconduct, also tended to show Baker's lack of good faith in prescribing multiple dangerous drugs and narcotics to the undercover agents. Baker could not validly claim he had been surprised or tricked by the court's admission of the evidence, for he himself had had the initial opportunity to explain his entire conduct.

■ Baker also contends the court erred in admitting proof of the destruction of exhibits during the course of the preliminary hearing. He argues that no substantial evidence supports the conclusion that *he* took the exhibits, that therefore the evidence did not tend to show consciousness of guilt, that consequently the evidence of destruction was irrelevant and should have been excluded. This contention lacks merit. The prosecution is not restricted to eyewitness testimony that Baker destroyed exhibits (*People* v. *Lumar,* 267 Cal.App.2d 900, 905 [73 Cal.Rptr. 682]), and it may prove such a fact by circumstantial evidence (*People* v. *Martin,* 16 Cal.App.2d 515, 518 [60 P.2d 1014]). Baker was the last person seen with the exhibits, he had both motive and opportunity to destroy them, and it is rationally inferable that he purloined the exhibits and arranged for their destruction.

3. *Instructions.* Baker contends the court erred in failing to instruct the jury on the defense of entrapment and failing to give on its own motion a cautionary instruction on the limited use of evidence of other misconduct.

We discern no inadequacy in the instructions. ■ An instruction on entrapment was not required, because the evidence established no basis for such a defense. (*People* v. *Gossett,* 20 Cal.App.3d 230, 233 [97 Cal. Rptr. 528].) Baker testified he prescribed codeine because he believed the condition of the undercover agents required it. He did not testify, nor did the evidence suggest, that he was lured into crime by persuasive or deceitful representations tendered by the undercover agents. (See *Patty* v. *Board of Medical Examiners,* 9 Cal.3d 356, 368 [107 Cal.Rptr. 473, 508 P.2d 1121].) Nor was the court required to give on its own motion a cautionary instruction on the limited use of evidence of other misconduct by Baker. ■ Absent a specific request the court need only instruct on general principles of law, of which the cautionary instruction is not one. (*People* v. *Beagle,* 6 Cal.3d 441, 456 [99 Cal.Rptr. 313, 492 P.2d 1].)

4. *Conditions of Probation.* On 29 January 1973 the court sentenced Baker to state prison on both convictions, the sentences to run concurrently. It then suspended execution of the sentences and placed Baker on probation, stating in part: "Now, I am going to impose a very substantial fine against you, sir, and I guess you are going to wonder why it's so substantial. And first of all, I think that you are able to in some wise reimburse the county and the state for the costs of your prosecution. You have brought about all of this, and 99 percent of the time, defendants in the position that you are, Dr. Baker, do not have the funds to reimburse the taxpayers for this, and I am going to order this very substantial amount so that you can reimburse the county and the state for the costs of your prosecution, and also in some wise to maybe pay something for your staying out of jail, because the Court seriously thought about imposing some time in jail as a condition of probation, but I am not going to do that. I hope you will learn your lesson and you will conduct yourself in a proper way from here on in. You are to pay a fine of $90,000.00, plus penalty assessment, to the probation officer within a period of 30 days."

Shortly thereafter, the court determined to modify and correct its conditions of probation, and it notified Baker to return to court on 2 February 1973. That morning only minutes before the court called his case, Baker filed a notice of appeal. The court then said in part: "At the time of the pronouncement of judgment in this case, the Court indicated that it wanted the defendant to reimburse the county and the state for the costs of its prosecution and indicated the defendant was able to do so because of his financial means and suggested the amount of $90,000. However, in announcing the same, the Court out of habit fixed the amount to be

paid as a fine plus penalty assessment. The Court wishes to vacate the order as to the money to be paid and to make the following order instead: The Court feels that in addition to the other conditions of probation, that a reasonable condition thereof is one also to be fit and proper to effect justice and to aid in the defendant's rehabilitation, to make amends and reparation to society, and in further consideration of the fact the Court is not imposing any time in custody as a condition of probation. The defendant is ordered to reimburse the county and state in the sum of $90,000 for the costs of its prosecution and supervision under probation. It is estimated the costs of same would be in the minimum amount of $90,000, and the Court finds that said amount is well within the defendant's financial ability to pay."

As further conditions of probation, Baker was to pay two $5,000 fines plus penalty assessment (see Pen. Code, §§ 672, 1203.1) and refrain from issuing prescriptions of any kind or giving injections to any person without approval of another doctor. (See *People* v. *Frank,* 94 Cal.App.2d 740 [211 P.2d 350].)

Baker contends the court lacked jurisdiction to modify and correct its conditions of probation once he filed his notice of appeal. Yet Baker had been advised prior to the time he filed his notice that the court intended to modify and correct its conditions of probation. Undoubtedly, the original conditions of probation, described as a $90,000 fine plus penalty assessment, were invalid. But a court is entitled to correct invalid conditions of probation. ▄ We do not think a litigant can forestall timely correction of invalid conditions of probation by filing a notice of appeal which is patently designed to oust the trial court from jurisdiction.[2] (*In re Osslo,* 51 Cal.2d 371, 379-380 [334 P.2d 1]; *People* v. *West Coast Shows, Inc.,* 10 Cal.App.3d 462, 467-468 [89 Cal.Rptr. 290]; Witkin, Cal. Criminal Procedure (1963) § 638, p. 630; *People* v. *Blume,* 183 Cal. App.2d 474, 477-478 [7 Cal.Rptr. 16]; *People* v. *Hartsell,* 34 Cal.App. 3d 8, 13 [109 Cal.Rptr. 627].)

Baker additionally contends that the corrected conditions of probation, the $90,000 charge for restitution to the state of costs of prosecution and costs of supervision under probation, were equally invalid, even though his liability had been re-classified as reparation and as a reasonable condition of probation.

---

[2]Baker made a special point that the record reflect the time of filing notice of appeal (9:14 a.m.) and the time of modification of conditions of probation (9:31 a.m.).

Penal Code section 1203.1 creates and limits the trial court's power to grant probation. (*People* v. *Brown,* 111 Cal.App.2d 406, 408 [244 P.2d 702].) It provides in part that the trial court "may in connection with granting probation . . . provide for reparation in proper cases" and "may impose and require . . . other reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from such breach and generally and specifically for the reformation and rehabilitation of the probationer. . . ." ■ The courts interpret the term *reparation* in section 1203.1 to mean reimbursement to the victims of crime for actual loss flowing from the charged offense or from related misconduct. (See *People* v. *Williams,* 247 Cal. App.2d 394, 401-409 [55 Cal.Rptr. 550]; *People* v. *Labarbera,* 89 Cal. App.2d 639, 642-644 [201 P.2d 584].) The government may be the beneficiary of that reimbursement if it has incurred actual loss due to the crime, as in the instance of tax evasion or theft of government property, but *reparation* does not include the general costs of prosecuting and rehabilitating criminals. The question then becomes whether the court's statutory power to impose *other reasonable conditions* of probation includes the power to require reimbursement to the state for costs of prosecution and of probational supervision. Jurisdictions that permit imposition of such costs generally do so under the explicit authority of statute (e.g., Mich. Comp. Laws, § 769.3, N.J. Stat. Ann. § 2A:168-2 [costs of prosecution]; N.M. Stats. Ann. § 40A-29-18 [costs of probation service]). It has been argued that the imposition of costs has "a salutary effect in selected cases, impressing upon [offenders] in tangible fashion that illegal behavior brings financially painful consequences. To encourage contrition, strike at the offender's pocketbook. . . ." (Dressler, Practice and Theory of Probation and Parole (2d ed.) p. 239.) But, recent legal analysis has questioned the reasonableness and usefulness of imposing costs of prosecution and probation as a condition of probation. (See A.B.A. Project on Standards for Criminal Justice, Standards Relating to Probation, Approved Draft, 1970, Commentary to § 3.2(f).) The uncertainty of such costs imposes on each defendant a potentially unlimited penalty for his crime. Conceivably, the spectre of costs may even deter him from exercising his right to a jury trial on the issue of guilt or innocence. We recognize that the trial court was attempting to formulate a rehabilitation plan suitable for this particular defendant, a wealthy, middle-aged doctor in failing health. However, Penal Code section 1203.1 explicitly authorizes the imposition of only limited fines as part of probation, which in turn should be oriented towards rehabilitation of the defendant and not toward the financing of the machinery of criminal justice. (*In re*

*Allen,* 71 Cal.2d 388, 393-394 [78 Cal.Rptr. 207, 455 P.2d 143].)
■ Since we view imposition of costs of prosecution and of probation as neither reparation nor a reasonable condition of probation under section 1203.1, the $90,000 liability as a condition of probation cannot stand.

The appeal from the order denying the motion for a new trial is dismissed. The condition of probation that defendant pay $90,000 for costs is vacated and set aside. In all other respects the judgment is affirmed.

Roth, P. J., and Compton, J., concurred.

A petition for a rehearing was denied June 19, 1974, and the opinion was modified to read as printed above.