[No. A054746. First Dist., Div. Two. Mar. 10, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT GANGEMI, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication except for parts IV and V.

## COUNSEL

William M. Robinson, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Laurence K. Sullivan and David D. Salmon, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PHELAN, J.**—Robert Gangemi was convicted of filing false deeds of trust in connection with an elaborate scheme to unlawfully shield a friend's personal assets from collection by judgment creditors. (Pen. Code, §§ 115, 115.5.)[1] He contends on appeal that the two $75,000 fines imposed under section 115.5 were improper, and, alternatively, imposition of more than one fine violated the proscription against double punishment. (§ 654.) We affirm the judgment of conviction, but reverse the imposition of the fines and remand for resentencing.

Since defendant does not dispute the bulk of the evidence of his convictions, we need to provide only a brief factual summary. Defendant's friend,

---

[1]Hereafter, all statutory references are to the Penal Code unless otherwise indicated.

In total, defendant was convicted of 12 counts of forgery (§ 470); 9 counts of felony offering false/forged instruments for filing (§ 115); 12 counts of preparing false documents (§ 134); attempted grand theft (§§ 487, subd. (1), 664); receiving stolen property (§ 496); and conspiracy to receive stolen property (§ 182).

Melvin Curtaccio, was sued by Nancy and Lauren Boscacci for damages following a burglary of their San Jose home. On August 24, 1989, the Boscaccis obtained a judgment against Curtaccio for $491,432. Curtaccio enlisted his girlfriend Sharon Rottiers and defendant to prepare and file with the San Mateo County Recorder's office numerous fraudulent grant deeds and deeds of trust encumbering his substantial real property holdings, and thus preventing the Boscaccis from executing on their judgment. Two deeds of trust listed defendant as the beneficiary of property valued at $1,196,000. Defendant was also convicted of receiving a stolen Porsche automobile (§ 496), conspiracy related to receipt of that car (§ 182), and attempted grand theft (§ 487, subd. 1).

In sentencing defendant to state prison for 16 months for receiving stolen property, the court also imposed fines, as specially alleged on counts 13 and 31 (filing a false deed of trust on a single-family residence), of $75,000 each, pursuant to section 115.5.[2] That section provides: "(a) Every person who files any false or forged document or instrument with the county recorder which affects title to, places an encumbrance on, or places an interest secured by a mortgage or deed of trust on, real property consisting of a single-family residence containing not more than four dwelling units, with knowledge that the document is false or forged, is punishable in addition to any other punishment, by a fine not exceeding seventy-five thousand dollars ($75,000)."

I

In his first contention, defendant asserts the fines were improperly imposed. Defendant argues that the fines were meant to benefit the owners of the property fraudulently encumbered, and were not meant to protect the interest of the judgment creditors of the property owners. We disagree. Defendant claims support for his view exists in the legislative history of the enactment of which section 115.5 is a part. Defendant directs our attention to Code of Civil Procedure section 749, which was enacted as part of the same bill which amended section 115 and added section 115.5. (Added Stats. 1984, ch. 1397, §§ 1, p. 4905, 8, p. 4907, 9, p. 4908.)

Code of Civil Procedure section 749 provides that in a suit by a homeowner or trustor against a beneficiary of a forged trust deed on his or her residence, the plaintiff may collect up to three times the amount of actual damages. Reasoning that the Legislature enacted Code of Civil Procedure section 749 with the specific objective of protecting homeowners because of

---

[2]The record does not reflect whether the fines include the penalty assessment required by section 1464 or whether the assessment is to be added thereon.

their perceived lack of sophistication, defendant wants us to draw the inference that section 115.5 was also limited to the protection of homeowners of single family residences. There is no support in logic or law for this position.

■ We begin our analysis from "the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.] In determining intent, we look first to the words themselves. [Citations.] When the language is clear and unambiguous, there is no need for construction" and courts should not indulge in it. (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1007-1008 [239 Cal.Rptr. 656, 741 P.2d 154]; *DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 601 [7 Cal.Rptr.2d 238, 828 P.2d 140].) We may disregard the plain meaning of the act, only when that meaning is "repugnant to the general purview of the act, or for some other compelling reason . . . . [Citations.]" (*DaFonte, supra*, at p. 601, internal quotation marks omitted.)

■ The language of the statute is clear and unambiguous and is susceptible of only one reasonable interpretation—that the phrase "every person" who files a false or forged document applies to all persons. That section neither states nor implies an exception for deceitful homeowners who unlawfully attempt to encumber *their own* property. The plain meaning of the words used by the Legislature supports no other construction.

Our interpretation is supported by reference to related statutes. (See generally, *Title Ins. & Trust Co.* v. *County of Riverside* (1989) 48 Cal.3d 84, 91 [255 Cal.Rptr. 670, 767 P.2d 1148].) Section 115.5 is part of chapter 4, which criminalizes the forging and falsifying of public documents. (See § 115.) It cannot be seriously debated that the credibility of public records is just as seriously threatened when the homeowner conspires to file a forged deed of trust on his own property, as when this is accomplished by some other person against an innocent homeowner. A similar conclusion was reached in *Generes* v. *Justice Court* (1980) 106 Cal.App.3d 678, 682 [165 Cal.Rptr. 222]. Defendant was found guilty, under section 115, of filing a fraudulent grant deed from herself to herself for an easement she did not own. In rejecting her contention that the statute was not violated if the writing is not a forgery, the court held that the crime is complete upon preparing a false deed and that it is not an element of the offense that someone be defrauded. (*Id.*, at pp. 681-682.) The court reasoned, "A title searcher encountering the spurious document who acted upon it as genuine would of course be materially deceived." (*Id.*, at p. 682.)

Section 115.5 is but a more specific application of the general statute (§ 115) and the purposes behind both statutes are the same—namely, to

preserve the integrity and reliability of public documents. It is no defense that the accused also owned the property for which the fraudulent documents were filed. Any contrary interpretation would draw an absurd distinction between classes of offenders. The legislative history cited by defendant does not compel a different result.

Based on the foregoing, we conclude the statute means what it says and the defendant was properly subject to the fines.

## II

 Next, defendant argues the court improperly imposed the fines for the express purpose of making him pay for the costs of his own prosecution. We agree.

In imposing the fines, the court stated: "It's a very unusual case in lots of ways. It's unusual in one way because it's one of the few chances that the Court has the opportunity to impose economic sanctions on a defendant to make him pay for the prosecution economically, because of special allegations in regard to Counts 13 and 31 which allow the Court to impose fines of $75,000 on each of those counts, and Mr. Gangemi according to the probation report has a net worth of, in excess of a million-and-a-half dollars, so we can expect if a large fine is imposed that it will be collected, which is highly unusual on a criminal case. . . . [¶] I think it's important in this case that the county and the state be reimbursed for the money they spent prosecuting this man. We don't often get a defendant who can afford to pay for the prosecution. This man can and I hope he will."

At the outset, we note the Attorney General claims the court did not impose the fine(s) for the express purpose of paying the prosecution costs, but only that this is an indirect result of imposition of the fine for other purposes. While the court may have had other reasons for imposing the fines, the court's rather plain language indicates it intended defendant to pay for the costs of prosecution. Accordingly, we reject the People's interpretation.

## A

*People* v. *Baker* (1974) 39 Cal.App.3d 550 [113 Cal.Rptr. 248], reversed a sentence requiring the defendant, as a condition of probation, to reimburse the county for the costs of prosecution. The court ruled this sentence was improper as not authorized by section 1203.1. (39 Cal.App.3d at p. 559.) At that time, the section authorized payment for reparation to the victim or to

the county. The *Baker* court interpreted this to require reimbursement for actual loss due to the crime, but not to include the general costs of prosecution. (*Ibid.*)

As it reads today, section 1203.1 permits the court to require, as a condition of probation, that defendant make restitution to the victim or to the restitution fund and to the public agency for the costs of emergency services. It does not permit the imposition of prosecution costs. That section has been amended seven times since the *Baker* decision, most recently in 1988. In no version did it authorize the imposition of prosecution costs. " 'There is a strong presumption that when the Legislature reenacts a statute which has been judicially construed it adopts the construction placed on the statute by the courts.' [Citation.]" (*Wilkoff* v. *Superior Court* (1985) 38 Cal.3d 345, 353 [211 Cal.Rptr. 742, 696 P.2d 134], fn. omitted.)

 We have not found any section in the Penal Code which permits prosecution costs to be a direct component of a fine. For example, section 1203.1b permits the court to require the probationer to pay costs of probation. Section 1203.1b includes the costs of purchasing and installing an ignition interlock device in the probation costs. Section 1203.1c permits the court to impose payment of costs of local incarceration. Under section 987.81, the court shall order the defendant to pay some or all of the costs of providing legal assistance, depending on present ability to pay.

If the Legislature intended a defendant to pay for some or all of the prosecution costs, it had ample opportunity to say so in these sections. Its failure to do so is further evidence that it never intended to give such sentencing authority to the trial court. We must conclude that the reimbursement of prosecution costs as a direct component of a penal fine is not authorized.

The People have alerted us to no contrary statute. They rely on section 670, subdivision (f), which sets out punishment for contractors and others who commit fraud and misrepresentation in connection with repairs to buildings damaged by natural disasters. Subdivision (f) provides: "the prosecuting agency shall be entitled to recover its costs of investigation and prosecution from any fines imposed for a conviction under this section." This section cannot be interpreted as legislative approval to impose a fine for the costs of prosecution. The section only permits the county to get reimbursed *after* the fine was otherwise properly imposed.

The People also rely on section 6231, which provides that a portion of the wages earned by an inmate be paid to the county to offset the costs of his prosecution. This section does not apply to penal fines and is clearly inapposite to the issue before us.

We conclude the trial court had no statutory authority to impose the maximum fines for the express purpose of reimbursing the county for the costs of prosecution.

Our conclusion is further supported by reference to the legislative history of section 115. Defendant properly points out that the language in an amendment by the Assembly to section 115—providing for reimbursement for the costs of the prosecution's investigation—was not carried over to the version of the bill finally adopted. (Assem. Bill No. 2238 (1983-1984 Reg. Sess.) Apr. 11, 1984, 7 Assem. J. (1983-1984 Reg. Sess.) p. 13166; Sen. Amend. to Assem. Bill No. 2238 (1983-1984 Reg. Sess.) June 15, 1984, 6 Sen. J. (1983-1984 Reg. Sess.) p. 11186.)[3] "The rejection by the Legislature of a specific provision contained in an act as originally introduced is most persuasive to the conclusion that the act should not be construed to include the omitted provision. [Citations.]" (*Crespin* v. *Kizer* (1990) 226 Cal.App.3d 498, 514 [276 Cal.Rptr. 571], internal quotation marks and fn. omitted.) We believe the Legislature has clearly rejected any attempt to require reimbursement for the costs of prosecution and thus it was improper for the trial court to impose a fine for that purpose.

In light of our conclusion, it is unnecessary to address defendant's constitutional challenge to the imposition of prosecution costs.

## B

Although prosecution costs may not be imposed, the sentencing court may have had other valid reasons to impose the fines. A penal fine, like this one, is a form of punishment. (See generally, *People* v. *Walker* (1991) 54 Cal.3d 1013, 1019 [1 Cal.Rptr.2d 902, 819 P.2d 861].) ■ As with other sentencing decisions, the trial court has wide discretion in deciding the amount of the fine. (See, e.g., *People* v. *Wyman* (1985) 166 Cal.App.3d 810, 815-816 [212 Cal.Rptr. 668] [court has broad discretion in deciding how much to impose as restitution fine under Gov. Code, § 13967, subd. (a)].) Defendant concedes there is no requirement that the court state its reasons for imposing a particular amount. (See Cal. Rules of Court, rule 406; also *People* v. *Griffin* (1987) 193 Cal.App.3d 739, 741 [238 Cal.Rptr. 371].) However, the trial court's discretion is not without bounds. (See *People* v. *Bolton* (1979) 23 Cal.3d 208, 216 [152 Cal.Rptr. 141, 589 P.2d 396].) Excessive fines are prohibited. (Cal. Const., art. I, § 17.) Also, to avoid the claim of arbitrariness, the amount of the fine must find support in the record. (See *Wyman*, *supra*, at p. 815.) We conclude the trial court may consider the same factors used in making the initial sentencing choices in arriving at the amount of the

---

[3]That section states: "(c) The court shall order a person found guilty under this section to reimburse prosecuting entities for the costs of investigation leading to prosecution."

fine, e.g., the nature of the crime, the defendant's background and criminal history.

Courts reviewing the imposition of restitution fines pursuant to Government Code section 13967[4] have adopted this approach, and it is reasonable to do the same in this case. (See *People* v. *Blankenship* (1989) 213 Cal.App.3d 992, 998, fn. 5 [262 Cal.Rptr. 141]; *Griffin, supra,* 193 Cal.App.3d at pp. 741-742 [defendant's criminal history is proper consideration]; *People* v. *Romero* (1985) 167 Cal.App.3d 1148, 1156-1157 [213 Cal.Rptr. 774] [judge must consider factors relevant to the offense and offender]; *Wyman, supra,* 166 Cal.App.3d at p. 815 [amount of fine is based on trial evidence and probation report].) Accordingly, we conclude that when deciding the amount of the fine to be imposed, the trial court may properly consider any relevant factors, including those aggravating and mitigating factors used in imposing a prison term (see Cal. Rules of Court, rule 421 et seq.) as well as those items enumerated in Government Code section 13967.

On remand, the trial court is to consider any relevant factor in determining the amount of the fine.

### III

 Defendant next argues the imposition of two fines violates the bar against double punishment contained in section 654. We disagree. Section 654 prohibits multiple punishments for more than one offense arising out of a single "act or omission," and where several offenses are committed during an "indivisible transaction" having a single criminal objective. (*People* v. *Harrison* (1989) 48 Cal.3d 321, 335 [256 Cal.Rptr. 401, 768 P.2d 1078]; *People* v. *Perez* (1979) 23 Cal.3d 545, 551 [153 Cal.Rptr. 40, 591 P.2d 63].) The section is not applicable where the defendant has entertained multiple criminal objectives which were independent of and not incidental to each other, even though the violations were parts of an otherwise indivisible course of conduct. (*Perez, supra,* at pp. 551-552.)

### A

 First, we hold that section 115.5 does not describe a separate criminal offense, but it is an enhancement to the more general crime of

---

[4]That section provides: "(a) . . . In setting the amount of the fine for felony convictions, the court shall consider any relevant factors including, but not limited to, the seriousness and gravity of the offense and the circumstances of its commission, any economic gain derived by the defendant as a result of the crime, and the extent to which others suffered losses as a result of the crime. Those losses may include pecuniary losses to the victim or his or her dependents as well as intangible losses, such as psychological harm caused by the crime."

offering false instruments for filing (§ 115). The specific crime in section 115.5 of offering a false deed of trust on a single family residence necessarily violates the broader section 115. Enhancements typically focus on an aspect of the commission of the crime which is not present for all such crimes. (See *People* v. *Hernandez* (1988) 46 Cal.3d 194, 207-208 [249 Cal.Rptr. 850, 757 P.2d 1013].) Also, section 115.5 does not prescribe a prison term, but provides for a $75,000 fine "in addition to any other punishment." This language is typical of many enhancement statutes. (46 Cal.3d at p. 207, fn. 15.) Further, the abstract of judgment reflects that defendant was convicted of section 115, and not section 115.5.

We therefore turn to the language of section 115, which provides: "(d) For purposes of prosecution under this section, each act of procurement or of offering a false or forged instrument to be filed, registered, or recorded shall be considered a separately punishable offense." This language demonstrates an express legislative intent to exclude section 115 from the penalty limitations of section 654. Thus, the Legislature has unmistakably authorized the imposition of separate penalties for each prohibited act even though they may be part of a continuous course of conduct and have the same objective. (See *People* v. *Djekich* (1991) 229 Cal.App.3d 1213, 1220-1225 [280 Cal.Rptr. 824] [10 fines may be imposed for 10 days of violating zoning ordinance].) We conclude that each false filing is separately punishable.

B

Even if we treat section 115.5 as a separate offense subject to the double punishment prohibition, we conclude that section 654 is not violated. In *People* v. *Neder* (1971) 16 Cal.App.3d 846 [94 Cal.Rptr. 364], defendant was convicted of three counts of forgery for using a stolen Sears credit card to charge purchases in three different departments in the same store and on the same day. Defendant argued that he could only be punished for one of the offenses since they were part of a single plan to take goods from Sears by forging the credit slips. (*Id.*, at pp. 854-855.) The court rejected this "criminal objective" as being too broad to tie the separate acts into a single transaction. (*Ibid.*) The court reasoned that each forgery was not a means to accomplish any other; it was not a means to the immediate end of any of the others; and each forgery was committed for the taking of goods, separate and unrelated to the goods taken by the other forgeries. (*Ibid.*)

Here, defendant filed several false deeds of trust with the San Mateo County Clerk. Each offense was complete upon knowingly offering that false document for filing, and one act was not a means to the end of any of the others. It is no defense to assert that these acts were part of an indivisible

transaction which had as its single criminal objective the illegal protection of Curtaccio's property from his creditors. As in *Neder*, such an objective is too broad to satisfy the purposes of section 654.

As explained in *People* v. *Perez, supra,* a prosecution for multiple sexual offenses against a single victim: "Assertion of a sole intent and objective to achieve sexual gratification is akin to an assertion of a desire for wealth as the sole intent and objective in committing a series of separate thefts. To accept such a broad, overriding intent and objective to preclude punishment for otherwise clearly separate offenses would violate the statute's purpose to insure that a defendant's punishment will be commensurate with his culpability. [Citation.] It would reward the defendant who has the greater criminal ambition with a lesser punishment. [Citation.]" (23 Cal.3d at p. 552; accord *Reliable Enterprises, Inc.* v. *Superior Court* (1984) 158 Cal.App.3d 604, 625-626 [204 Cal.Rptr. 786].)

Each false filing creates a separate harm to the person defrauded as well as to the integrity of the public records and the defendant may be punished for each such criminal act. Otherwise, to apply section 654 in this case would violate the law's goal of punishing violators commensurate with their criminality.

Defendant's reliance on *People* v. *Brooks* (1985) 166 Cal.App.3d 24 [210 Cal.Rptr. 90], does not compel a different result. Brooks, an auctioneer, stole the proceeds of 14 pieces of farm equipment consigned to him. He was convicted of 13 felony counts of grand theft and 1 count of misdemeanor theft. The court of appeal reversed, holding that a single theft, from a single fund, pursuant to a single objective of "kiting" auction proceeds, resulted in only one punishable offense of grand theft. (*Id.,* at p. 31.)

Unlike the interrelated thefts in *Brooks,* defendant here was properly convicted of numerous, separate offenses of offering false deeds of trust for filing. *Brooks* is inapposite and defendant's contention must fail.

### IV, V*

. . . . . . . . . . . . . . . . . . . . . . . . .

The judgment of conviction is affirmed. The sentence imposing the two $75,000 fines is reversed, and the cause is remanded to the trial court for a

---

*See footnote, *ante*, page 1790.

determination of the proper amount of the fines consistent with our discussion.

Smith, Acting P. J., and Benson, J., concurred.