Filed 8/29/16  P. v. Jercich CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>GEORGE JERCICH,<br><br>    Defendant and Appellant. | F069558<br><br>(Super. Ct. No. CRM015553A)<br><br><br>**OPINION** |

-ooOoo-

**INTRODUCTION**

The essential facts of this criminal case are not in dispute.  On July 20, 2005, appellant George Jercich and Bonnie Campbell went to a notary public's office in the County of Madera where Bonnie presented an old driver's license belonging to appellant's former wife, Mary James, and forged Mary's signature on two deeds

APPEAL from a judgment of the Superior Court of Merced County.  Marc A. Garcia, Judge.

Robert Derham, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Lewis A. Martinez and Rebecca Whitfield, Deputy Attorneys General, for Plaintiff and Respondent.

purporting to transfer ownership of two parcels of real property (referred to by the parties as the "Conestoga Property" and "Snelling Property") from appellant and Mary, as joint tenants, to appellant, as his separate property.[1]  Appellant later caused the deeds to be recorded in Merced County where the Conestoga and Snelling properties were both located.  Mary, who was 66 years old at the time of the 2005 forgery, upon learning of the deeds' existence in 2008, contacted the Merced County District Attorney's office, seeking to file a complaint against appellant for real estate fraud.

On March 6, 2014, a jury convicted appellant of four felony offenses, labeled as follows, in the verdict forms:  "Theft from [an] Elder" (Pen. Code,[2] § 368, subd. (d); Count 1); "Forgery of a Conveyance" (§ 470, subd. (c); Count 4); "Filing a False Deed" (§ 115, subd. (a); Count 5); and "Conspiracy to Commit Theft From an Elder Adult" (§ 182, subd. (a)(4); Count 7).

With respect to Count 5, the jury found true the enhancement under section 115.5, subdivision (a), which, mirroring the language of the statute, alleged that appellant "filed a false and forged document with the County Recorder which affected title to, placed an encumbrance on, or placed an interest secured by a mortgage and deed of trust on real property consisting of a single-family residence containing not more than four dwelling units, knowing the document was false and forged."

After the trial court sentenced appellant to a total prison term of four years, appellant filed a timely appeal and raised claims of sentencing error in his original opening brief.  Subsequently, the trial court, after receiving notice of sentencing errors from the California Department of Corrections and Rehabilitation, resentenced appellant on November 18, 2014, to another aggregate prison term of four years as follows:  the

---

[1]    We refer to some witnesses by first names for purposes of clarity only; no disrespect is intended thereby.

[2]    Further statutory references are to the Penal Code unless otherwise specified.

upper term of four years for Count 1, plus the upper term of three years for each of Counts 4, 5, and 7, ordered to run concurrently with the term imposed for Count 1. In addition, the court imposed a fine of $10,000 for the section 115.5, subdivision (a) enhancement it failed previously to impose.

Appellant thereafter sought permission to file supplemental briefing raising additional claims of error concerning both his resentencing and the criminal trial. Based on our review of the issues raised by the parties' original and supplemental briefing on appeal, we have reached the following three conclusions:

First, the trial court did not err in refusing to give appellant's requested instruction on the claim-of-right defense to theft because such instruction was unsupported by the People's evidence and theories of liability for Counts 1 and 7, which were premised on appellant's commission of forgery, not theft.

Second, the trial court erred on resentencing in imposing the section 115.5 enhancement fine of $10,000 because, as appellant correctly argues, there was no evidence that the relevant deed purporting to convey the Snelling Property "affect[ed] title to … real property consisting of a single-family residence" (§ 115.5, subd. (a)), as undisputed evidence established that the Snelling Property was real property consisting of around 46 acres of undeveloped land.[3]

Finally, we conclude that section 654 requires the concurrent terms imposed for Counts 4 and 7, but not that imposed for Count 5, to be stayed.

In light of these conclusions, we will strike the section 115.5 enhancement fine of $10,000 imposed on Count 5, and stay the sentences for Counts 4 and 7. In all other respects, we will affirm the judgment.

---

[3]    In light of our conclusion that the section 115.5 enhancement fine must be stricken for insufficient evidence, we need not reach appellant's other challenge to the fine; namely, that its imposition upon resentencing violated due process and double jeopardy principles because it resulted in a sentence that was greater than his original sentence.

## DISCUSSION

### I. Trial Court Properly Refused to Instruct on Claim-of-Right Defense

Appellant contends he was prejudicially denied his right to present a defense by the trial court's refusal to give his requested instruction on the claim-of-right defense to theft with respect to the offenses of theft from an elder adult (Count 1) and conspiracy to commit theft from an elder adult (Count 7).[4] This contention lacks merit.

#### A. *Applicable legal principles*

"'It is an established principle of the law of theft that a bona fide belief of a right or claim to the property taken, even if mistaken, negates the element of felonious intent.' [Citations.] It is equally well settled a trial court must give a requested instruction when there is sufficient evidence to support it, that is, when there is evidence from which reasonable jurors could conclude the facts underlying the instruction exist." (*People v. Romo* (1990) 220 Cal.App.3d 514, 517; see *People v. Panah* (2005) 35 Cal.4th 395, 484.) However, "'[a] party is not entitled to an instruction on a theory for which there is no supporting evidence.'" (*People v. Tufunga* (1999) 21 Cal.4th 935, 944.) "The claim-of-

---

[4]    Appellant requested that the trial court instruct the jury on the claim of right defense to theft under CALCRIM No. 1863, which states: "If the defendant obtained property under a claim of right, (he/she) did not have the intent required for the crime of (theft [or] robbery). [¶] The defendant obtained property under a claim of right if (he/she) believed in good faith that (he/she) had a right to the specific property or a specific amount of money, and (he/she) openly took it. [¶] In deciding whether the defendant believed that (he/she) had a right to the property and whether (he/she) held that belief in good faith, consider all the facts known to (him/her) at the time (he/she) obtained the property, along with all the other evidence in the case. The defendant may hold a belief in good faith even if the belief is mistaken or unreasonable. But if the defendant was aware of facts that made that belief completely unreasonable, you may conclude that the belief was not held in good faith. [¶] [The claim-of-right defense does not apply if the defendant attempted to conceal the taking at the time it occurred or after the taking was discovered.] [¶] [The claim-of-right defense does not apply to offset or pay claims against the property owner of an undetermined or disputed amount.] [¶] [The claim-of-right defense does not apply if the claim arose from an activity commonly known to be illegal or known by the defendant to be illegal.] [¶] If you have a reasonable doubt about whether the defendant had the intent required for (theft/ [or] robbery), you must find (him/her) not guilty of _____ <insert specific theft crime>."

right defense provides that a defendant's good faith belief, even if mistakenly held, that he has a right or claim to property he takes from another negates the felonious intent necessary for conviction of theft or robbery. At common law, a claim of right was recognized as a defense to larceny because it was deemed to negate the *animus furandi*, or intent to steal, of that offense." (*Id.* at p. 938.)

### B. Analysis

The trial court essentially concluded that the claim-of-right defense was unavailable here because, notwithstanding appellant's asserted belief that he was the true owner of the property at issue, in committing the offenses, he engaged in acts of concealment that were admittedly designed, in the court's words, to keep Mary "out of the loop" and prevent her from learning about his recording of the forged deeds purporting to transfer her interests in the property to appellant. (See CALCRIM No. 1863 ["claim-of-right defense does not apply if the defendant attempted to conceal the taking at the time it occurred or after the taking was discovered"].)

In disagreeing with the trial court's finding that the claim-of-right defense to theft was unavailable because undisputed evidence established he attempted to conceal the "taking" of the subject property, appellant asserts that, while "[h]e may have concealed the way in which the taking occurred"—i.e., by having Bonnie forge Mary's signatures on the deeds purporting to transfer ownership of the Conestoga and Snelling properties to appellant alone—"he openly announced the taking itself" when he "openly recorded the transfer deeds with the county." Appellant concludes: "In essence, he publically announced what he had done. Any member of the public, including Mary…, was free to inspect the recorded deeds."

The trial court rightly rejected this argument in the proceedings below. As appellant's trial counsel conceded when pressed by the court, appellant *concealed* the fact that the deeds were forged when he caused them to be recorded because, in counsel's words, "the recorder wouldn't have filed a false deed." Concealment and subterfuge

5.

were thus inherent aspects of appellant's conduct in his commission of the offenses and were wholly incompatible with a finding that he "openly took" property within the meaning of the claim-of-right defense. (CALCRIM No. 1863.)

None of the authorities appellant cites supports his novel suggestion that, despite his concealment of the falsified nature of the deeds from the county recorder, his conduct was nonetheless *open and avowed as to Mary* because certain circumstances, such as his deliberate failure to forward her tax bills for the properties, should have, according to his trial counsel, "put her on notice to watch what's going on at the recorder's office." Appellant's argument posited the contradictory ideas that conduct appellant admittedly intended to prevent Mary's discovery of the forged deeds should have, at the same time, put her on notice that he might be forging deeds and that she ought to begin monitoring the county recorder's office for fraudulent activity by him. Such theory as a basis for finding appellant's conduct open and avowed is untenable and merits minimal discussion.

Our review of the record, however, has uncovered a more fundamental problem with the requested jury instruction overlooked by the parties' arguments on appeal; namely, that the claim-of-right defense to theft was not applicable to any of the counts that went to the jury for determination as none was premised on appellant's commission of a theft to which the defense could have potentially applied to negate the requisite intent to steal. Despite the references to "theft" in the shorthand labels adopted to refer to Counts 1 and 7, the record clearly demonstrates these offenses were not premised on appellant's commission of *theft*, but, rather, were premised on his commission of *forgery*.

Count 1 in the second amended information broadly charged appellant with unlawfully violating a provision of law proscribing listed crimes, *including* the crime of *forgery*, in violation of section 368, subdivision (d).[5] The trial court instructed the jury on the prosecution's theory for Count 1, pursuant to CALCRIM No. 1807, as follows:

---

[5]     Count 1 thus mirrored the language of section 368, subdivision (d), which provides: "Any person who is not a caretaker who violates any provision of law proscribing theft,

6.

"The defendant is charged in Count 1 with theft of property from an elder in violation of … section 368[, subdivision] (d).  [¶]  To prove that the defendant is guilty of this crime, the People must prove that:  [¶] 1. *The defendant committed forgery*; [¶] 2. The property taken was owned by an elder; [¶] 3. The property, goods, or services obtained was worth more than $950; [¶] AND [¶] 4. The defendant knew or reasonably should have known that the owner of the property was an elder.  [¶]  *To decide whether the defendant committed forgery, please refer to the separate instructions that I will give you on that crime*.  [¶]  An elder is someone who is at least 65 years old.  [¶]  Property includes money, labor, or real or personal property."  (Italics added.)

The trial court's separate instructions on the crime of forgery were given pursuant to CALCRIM No. 1903, which told the jury:

"The defendant is charged in Count 4 with forgery committed by falsifying a legal document in violation of … section 470[, subdivision] (c).  [¶]  To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant falsified a document; [¶] 2. That document was a record of a conveyance or other legal writing that the law accepts as evidence; [¶] AND [¶] 3. *When the defendant falsified the document, he intended to defraud.  [¶]  Someone intends to defraud if he intends to deceive another person either to cause a loss of something of value, or to cause damage to, a legal, financial, or property right*.  [¶]  The People allege that the defendant falsified the following documents:  [¶] 1. Interspousal Transfer Deed:  Snelling Property [¶] 2. Interspousal Transfer Deed:  Conestoga Property  [¶]  You may not find the defendant guilty unless all of you agree that the People have proved that the defendant falsified at least one of these documents and you all agree on which document he falsified."  (Italics added.)

The "conspiracy to commit theft from Elder Adult" charged in Count 7 was also tied to the forgery alleged in Count 4.  Consequently, the overt acts listed in the pertinent jury instruction (i.e., CALCRIM No. 415) referred to circumstances relating to the

---

embezzlement, forgery, or fraud, or who violates Section 530.5 proscribing identity theft, with respect to the property or personal identifying information of an elder or a dependent adult, and who knows or reasonably should know that the victim is an elder or a dependent adult, is punishable …."

forgery and subsequent filing of forged deeds in the county recorder's office [6] The conspiracy instruction also referred the jury to the separate instructions given on the crime of "theft from Elder Adult" to decide whether appellant and Bonnie, the other alleged member of the conspiracy, intended to commit that crime. As already discussed, those instructions were contained in CALCRIM No. 1807, which essentially told the jury that to find appellant guilty of the offense of theft from an elder adult, as alleged in the second amended information, the jury had to find he committed *forgery*. None of the offenses on which the jury was instructed required it to find appellant possessed an intent to steal to which the claim-of-right defense could be applied to negate. And appellant does not dispute there was sufficient evidence he possessed the requisite intent to defraud required for forgery.

Although the parties' arguments on appeal do not address the fact appellant's commission of forgery was the basis of Counts 1 and 7, this fact should come as no surprise to them as it was specifically addressed by the trial court *immediately after* the parties' lengthy discussion regarding the requested claim-of-right instruction at issue on appeal.

In this regard, appellant's trial counsel asserted that "Count 1 should be attempted theft rather than a completed theft" and cited a court of appeal case for the following proposition: "Neither uttering, nor recording of the forged deeds was theft for the reason that nothing was taken: A forged deed does not convey title to its immediate grantee." (*People v. Sanders* (1998) 67 Cal.App.4th 1403,1409, fn. 9.) In response, the prosecutor essentially (and correctly) argued that *Sanders* was inapplicable to the elements of

---

**6**     The jury was thus instructed pursuant to CALCRIM No. 415 that the People were required to prove: "The defendant, or Bonnie Campbell, or both of them committed at least one of the following overt acts to accomplish theft from Elder Adult:  1) located and drove to a notary public office to create a forged document, 2) provided false identification to a notary public, 3) provided a false signature to a notary public, and 4) caused a forged deed to be filed with the County Recorder's office."

section 368 pertinent to Count 1, which the prosecutor noted were set forth in the version of CALCRIM No. 1807 given in this case, which required first a showing that "the defendant committed *forgery*." (Italics added.) The trial court agreed, noting that *Sanders* involved "more generic" theft offenses, whereas here the statutory offense of "theft from an elder is actually surprisingly different" and had, as alleged in this case, "very specific elements … the most important one in my analysis would be the defendant committed *forgery*." (Italics added.)

In short, the trial court had no obligation to give the requested instructions on the claim-of-right defense to theft because neither the facts nor theories underlying Counts 1 and 7 supported it.

## II. Insufficient Evidence Supports the Section 115.5 Enhancement Fine

As mentioned above, appellant contends the section 115.5 enhancement fine of $10,000 must be stricken because there was no evidence the relevant forged deed to the Snelling property "affect[ed] title to … real property consisting of a single-family residence" within the plain meaning of the statute. (§ 115.5, subd. (a).) This contention has merit.

### A. *Applicable legal authority*

Section 115.5 provides in relevant part:

> "(a) Every person who files *any false or forged document* or instrument with the county recorder *which affects title to*, places an encumbrance on, or places an interest secured by a mortgage or deed of trust on, *real property consisting of a single-family residence* containing not more than four dwelling units, with knowledge that the document is false or forged, is punishable, in addition to any other punishment, by a fine not exceeding seventy-five thousand dollars ($75,000)." (Italics added.)

Generally, "[t]he court's role in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law and, in doing so, the court looks first to the words of the statute." (*Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 129.) "If the language of [the subject] statute is clear and unambiguous,

9.

judicial construction is not necessary and a court should not indulge in it." (*Ibid.*) However, "[i]f the language is ambiguous, we may look to the history and background of the statute to ascertain legislative intent." (*Ibid.*) Such extrinsic evidence of the Legislature's intent, includes the ostensible "public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1008.)

### B. Analysis

We need not indulge in judicial construction of section 115.5, as we conclude its language is clear and unambiguous and that the real property underlying the enhancement clearly did not qualify as real property consisting of a single-family residence under the plain meaning of the statutory language in question. The dictionary definition defines "consist" to mean "to be composed of or made up of." (Merriam-Webster's Collegiate Dict. (10th ed. 2001) p. 246.)[7] As mentioned above, undisputed evidence established the Snelling property underlying the section 115.5 enhancement was composed or made up of around 46 acres of undeveloped land. The forged deed purporting to transfer ownership of the land from appellant and Mary to appellant alone referred to the Snelling Property as "Parcel 2" and described it in terms of its location on county parcel maps.

---

[7] Notably, at least two legal dictionaries incorporate the ordinary dictionary definition of "consist" in related definitions. Black's Law Dictionary defines the term "consisting" to mean "[t]o be composed or made up of" and further explains: "This word is not synonymous with 'including', for the latter, when used in connection with a number of specified objects, always implies there may be others which are not mentioned." (Black's Law Dict. (5th ed. 1979) p. 279.)

A Dictionary of Modern Legal Usage similarly incorporates the dictionary definition of "consist" in its discussion elucidating the difference between the phrases "consist in" and "consist of": "American writers too often ignore the distinction. *Consist of* is used in reference to materials; it precedes the physical elements that compose a tangible thing; cement, for example, *consists of* alumina, lime, silica, iron oxide, and magnesia. E.g., 'The document admitted to probate *consists of* a single sheet of legal cap paper .… [¶] *Consist in* (= has as its essence) precedes abstract elements or qualities, or intangible things; e.g., a good moral character *consists in* integrity, decency, fairness, and compassion." (Garner, Dict. Of Modern Legal Usage (2d ed. 1995) p. 207.)

10.

Despite the lack of evidence that the real property at issue was composed of a single-family residence, the People relied on evidence that appellant lived in a double-wide mobilehome he placed on the Snelling Property to prove the section 115.5 enhancement.  The People do not dispute the mobilehome was appellant's personal property, was unattached to the land, and its removal would be required if the underlying real property described in the deed were ever sold.  Nonetheless, the People maintain that the Snelling Property became real property consisting of a single-family residence under the statute's plain meaning as a result of appellant's use of the mobilehome as his residence.

In this regard, the People baldly assert that "the plain meaning of the phrase 'real property consisting of a single-family residence'" in subdivision (a) of section 115.5 "means land with a single-family residence on it."  The People thus conclude that "the statute does not require the single-family residence to *be* the real property, only that a single-family residence be *located* on real property."  (Italics added.) We find no basis, either in law or logic, to accept the People's interpretation as constituting the *plain meaning* of the statutory language in question, particularly in light of the fact it requires the addition of words not already in the statute to support such interpretation.

Because we conclude the statutory language is unambiguous, we need not look at the legislative history behind section 115.5, as "we presume the Legislature meant what it said and the plain meaning of the statute governs." (*People v. Snook* (1997) 16 Cal.4th 1210, 1215.)  The facts in this case did not support application of section 115.5, subdivision (a) and, therefore, the enhancement fine imposed under the statute must be stricken.

III.    **Section 654 Requires the Sentences for Counts 4 and 7 to Be Stayed**

Before he was resentenced in November 2014, appellant asserted in his original opening brief that "[n]o matter how the sentence is structured, each conviction is part of an indivisible course of conduct that served one objective—to convey Mary['s] …

11.

interest in the property to [appellant] alone" and, therefore, section 654 required the trial court to stay the concurrent terms it imposed for three of his four convictions. Appellant did not re-raise his section 654 claim in his supplemental opening brief after resentencing; however, his claim remains viable because, though structured differently, his sentence again consisted of concurrent terms for his convictions.

### A. Applicable law

Section 654, subdivision (a) provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

Section 654 "precludes multiple punishment for a single act or omission, or an indivisible course of conduct" (*People v. Deloza* (1998) 18 Cal.4th 585, 591) and ensures the defendant's punishment will be commensurate with his or her criminal culpability (*People v. Kramer* (2002) 29 Cal.4th 720, 723). It has long been established that trial courts may not impose concurrent sentences precluded by section 654 because the defendant is subjected to the term of both sentences even though they are served simultaneously. (*People v. Jones* (2012) 54 Cal.4th 350, 353.) If a defendant suffers two convictions and punishment for one is barred by section 654, "that section requires the sentence for one conviction to be imposed, and the other imposed and then stayed." (*Deloza*, at pp. 591–592.)

Whether a course of conduct is indivisible for purposes of section 654 depends on the intent and objective of the defendant, not the temporal proximity of the offenses. (*People v. Hicks* (1993) 6 Cal.4th 784, 789.) Generally, if all the criminal acts were incident to one objective, then punishment may be imposed only as to one of the offenses committed. (*People v. Rodriguez* (2009) 47 Cal.4th 501, 507; *People v. Garcia* (1995) 32 Cal.App.4th 1756, 1781.)

## B. Analysis

As we have explained, appellant's conviction on Count 1 for committing theft from an elder adult in violation of section 368 was based on his commission of the *forgery* which was the basis of his conviction for violating section 470, subdivision (c) under Count 4. Therefore, the terms of section 654 applied literally to these counts, which represent an act of forgery giving rise two different statutory violations, and the trial court should have stayed the three-year term it imposed for Count 4, instead of ordering it to run concurrently with the four-year term it imposed for Count 1.

The trial court should have likewise stayed the concurrent three-year term it imposed on Count 7 for appellant's conviction of conspiring to commit the crime of theft from an elder for which he was convicted under Count 1. (See *People v. Ramirez* (1987) 189 Cal.App.3d 603, 616 [double punishment prohibited by § 654 occurs when conspiracy has but one object which is punished as a substantive offense].)

We reach a different conclusion, however, with respect to appellant's conviction on Count 5 for filing a false deed in violation of section 115, subdivision (a). Section 654 did not preclude imposition of a separate concurrent three-year term on this count. (See *People v. Gangemi* (1993) 13 Cal.App.4th 1790, 1800–1801 (*Gangemi*) [holding language of §115, subd. (d) creates legislative exception to § 654, and multiple punishment for multiple violations of § 115, subd. (a) consistent with § 654's purpose to ensure punishment commensurate with culpability].)[8]

Although *Gangemi*, *supra*, 13 Cal.App.4th 1790, unlike this case, involved multiple punishment for multiple violations of section 115, subdivision (a), we find the court's rationale equally applicable here. As the court there explained, "Each false filing creates a separate harm to the person defrauded as well as to the integrity of the public

---

[8]    Section 115, subdivision (d) provides: "For purposes of prosecution under this section, each act of procurement or of offering a false or forged instrument to be filed, registered, or recorded shall be considered a separately punishable offense."

records." (*Gangemi*, at p. 1801.)  Appellant's single violation of the statute created a separate harm to Mary, the person defrauded, as well as to the integrity of the public records in the county recorder's office.  Therefore, separate punishment was commensurate with appellant's culpability on Count 5, and the trial court was not required to stay the concurrent term imposed for that count.

## *DISPOSITION*

The Penal Code section 115.5 enhancement fine of $10,000 imposed on Count 5 is stricken, and the sentences on Counts 4 and 7 are stayed pursuant to Penal Code section 654.  In all other respects, the judgment is affirmed.  The trial court is directed to prepare and forward to the California Department of Corrections and Rehabilitation an amended abstract of judgment.

_____

HILL, P.J.

WE CONCUR:


_____

KANE, J.


_____

POOCHIGIAN, J.

14.