[No. B152891. Second Dist., Div. Five. July 25, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
BRIAN WASHINGTON, Defendant and Appellant.

**COUNSEL**

Leonard J. Klaif, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Victoria B. Wilson and Jim E. Hart, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GRIGNON, J.**—A defendant on felony probation absconded from supervision and fled to Alabama. A bench warrant was issued for his arrest. He was arrested in Alabama and extradited to California. The costs of extradition totaled $5,603.49. Defendant admitted he was in violation of probation for desertion of probation supervision. The trial court revoked probation, but reinstated it on certain additional conditions. The trial court also ordered defendant to pay the costs of extradition. Defendant appeals, challenging the order requiring payment of the costs of extradition as statutorily unauthorized. We conclude the trial court was authorized to order payment of the costs of extradition as a "reasonable cost of any probation supervision" within the meaning of Penal Code section 1203.1b, subdivision (a). We affirm.

### FACTS AND PROCEDURAL BACKGROUND

On January 6, 2000, defendant and appellant Brian Washington pleaded nolo contendere to sexual intercourse with a minor (Pen. Code, § 261.5, subd. (c)). The trial court placed defendant on probation with credit for time served. Defendant never reported to probation and was arrested for felony assault in violation of Penal Code section 245, subdivision (a)(1). On March

1, 2000, defendant admitted a violation of probation in lieu of the filing of new charges for felony assault. The trial court revoked, but reinstated probation on condition defendant serve one year in the county jail. Defendant again failed to report to probation, but instead traveled to Alabama. A bench warrant was issued for his arrest based on his desertion of probation. Alabama law enforcement officers arrested defendant. Defendant was extradited to California on the warrant at a cost of $5,603.49. On June 1, 2001, defendant admitted the violation of probation based on his desertion. The trial court reinstated probation on condition defendant serve 180 days in the county jail. On July 11, 2001, the trial court also ordered defendant to pay the costs of his extradition from Alabama, but stayed the order for one year and directed the Probation Department to determine defendant's ability to pay the extradition costs at the end of the one-year stay. Defendant objected to the reimbursement order as unauthorized, but stipulated to the amount of the extradition costs.

## DISCUSSION

■ Defendant contends the order to pay the costs of extradition is statutorily unauthorized. The prosecution responds that the order is authorized as a cost of probation supervision under Penal Code section 1203.1b. We agree with the prosecution.

Penal Code section 1203.1b provides in pertinent part: "In any case in which a defendant is . . . granted probation . . . , the probation officer . . . shall make a determination of the ability of the defendant to pay all or a portion of the reasonable cost of any probation supervision . . . . [¶] . . . The court shall order the defendant to pay the reasonable costs if it determines that the defendant has the ability to pay those costs based on the report of the probation officer . . . ." The statute also authorizes orders to a defendant to pay the cost of preplea investigation and report, presentence investigation and report, jurisdictional transfer processing, and request for interstate compact supervision processing.[1] These costs are collectible as civil judgments; neither contempt nor revocation of probation may be utilized as a remedy for failure to pay. (Pen. Code, § 1203.1b, subd. (d); *People*

---

[1]As originally enacted in 1980, Penal Code section 1203.1b gave the trial court discretion to order payment of "[t]he reasonable cost of probation." (Stats. 1980, ch. 555, § 1, p. 1538.) In 1981, the statute was amended to also authorize payment of the reasonable cost of "conducting the presentence investigation and preparing the presentence report." (Stats. 1981, ch. 284, § 1, p. 1401.) In 1989, the statute was amended to make reimbursement orders mandatory, rather than discretionary. (Stats. 1989, ch. 1059, § 1, p. 3666.) In 1993, the statute was amended to also authorize payment of the reasonable cost of "processing a jurisdictional transfer" and "processing a request for interstate compact supervision." (Stats. 1993, ch. 273, § 2.5, p. 1962.) The statute was amended a second time in 1993 to also authorize payment of the reasonable cost "of conducting any preplea investigation and preparing any preplea

*v. Hart* (1998) 65 Cal.App.4th 902, 906-907 [76 Cal.Rptr.2d 837].) The costs are not conditions of probation. (*Hart, supra,* at pp. 906-907.)

The phrase "cost of any probation supervision" is not otherwise defined. It most certainly includes the normal cost of probation supervision. (See *People v. Phillips* (1994) 25 Cal.App.4th 62, 67 [30 Cal.Rptr.2d 321].) The question presented is whether it includes the costs of returning an absconding probationer from out of state. We conclude that it does. Defendant was required to report to his probation officer for supervision as a condition of probation. Defendant failed to report to his probation officer and absconded to Alabama. The probation officer in California could not supervise a probationer who had deserted probation and fled to another state. Thus, in order to maintain supervision of defendant, it was necessary to cause defendant to be returned to California. This was accomplished by the issuance of a bench warrant and the utilization of extradition procedures. The costs associated with the extradition under these circumstances were necessary to maintain probation supervision.

Penal Code section 1203.1b is a recoupment statute and should be flexibly interpreted in light of the legislative policy to conserve public funds. (*People v. Phillips, supra,* 25 Cal.App.4th at p. 69.) "Section 1203.1b and other recoupment statutes reflect a strong legislative policy in favor of shifting the costs stemming from criminal acts back to the convicted defendant." (*Ibid.*) "[R]ecoupment statutes demonstrate legislative concern for ' "replenishing a county treasury from the pockets of those who have directly benefited from county expenditures." ' [Citations.] It has also been acknowledged that the state has an important interest in recoupment laws in this age of expanding criminal dockets and the resulting heightened burden on public revenues. Recoupment laws reflect legislative efforts to recover some of these added costs and conserve the public fisc." (*Id.* at pp. 69-70.) The reimbursement order in this case effectuates the policy reasons underlying recoupment statutes. Defendant deserted probation and absconded to another state. As a result of defendant's actions, public funds were required to be expended to extradite defendant from Alabama. The order shifted the cost of defendant's flight from probation supervision from the general taxpayers to defendant.

The conclusion that probation supervision costs within the meaning of Penal Code section 1203.1b include the extradition costs of returning an absconding probationer to California is supported by the legislative history of the statute. Prior to the enactment of Penal Code section 1203.1b, Penal Code section 1203.1 authorized, as conditions of probation, the imposition

---

report"; the "reasonable cost of probation" language was changed to "reasonable cost of any probation supervision." (Stats. 1993, ch. 502, § 4, p. 2632.)

of certain monetary amounts, such as fines and reparation. Imposition of the costs of probation supervision was not expressly authorized as a condition of probation by Penal Code section 1203.1. In 1974, Division Two of the Second District considered whether a condition of probation ordering a defendant to pay $90,000 for the cost of his prosecution and probation supervision was authorized under Penal Code section 1203.1. (*People v. Baker* (1974) 39 Cal.App.3d 550, 557-560 [113 Cal.Rptr. 248].) "Penal Code section 1203.1 creates and limits the trial court's power to grant probation. [Citation.] It provides in part that the trial court 'may in connection with granting probation . . . provide for reparation in proper cases' and 'may impose and require . . . other reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from such breach and generally and specifically for the reformation and rehabilitation of the probationer. . . .' " (*Id.* at p. 559.) The appellate court concluded such costs were not justified as reparation or restitution, which are payable to the victims. The appellate court also concluded the payment of such costs was not authorized as a reasonable condition of probation. Accordingly, it held the payment order was not authorized as a condition of probation under Penal Code section 1203.1.

The reasoning of the *Baker* court was followed by this division in *People v. Burnett* (1978) 86 Cal.App.3d 320, 322-323 [150 Cal.Rptr. 126]. In *Burnett*, a trial court reinstated probation for a probationer, who had absconded out of state, on condition the defendant reimburse the county $1,216.79 for the costs of extradition. This division concluded the costs of extradition were not authorized conditions of probation under Penal Code section 1203.1. (*Burnett*, at pp. 322-323.)

In express response to the *Baker* case and implicit response to the *Burnett* case, Orange County requested enactment of a statute authorizing a trial court to assess a probationer the costs of probation supervision. (Cal. Youth and Adult Correctional Agency—Corrections, Enrolled Bill Rep. on Assem. Bill No. 3323 (1979-1980 Reg. Sess.) July 11, 1980, p. 1.) "Orange County Superior Courts used to impose probation costs in selected cases, however, the court stopped the practice in 1976 because there was no statutory basis for doing it. This bill would provide the statutory authority." (Cal. Youth and Adult Correctional Agency—Youth Authority, Enrolled Bill Rep. on Assem. Bill No. 3323 (1979-1980 Reg. Sess.) July 11, 1980, pp. 1-2.) "Most persons convicted of criminal violations find probation preferable to the prison sentence for which probation is an alternative. The effect of [Assembly Bill No.] 3323 is to require the convicted criminal to pay the costs of his rehabilitative program which otherwise would be borne by the general

taxpayer." (County of Los Angeles, approval of recommendation in favor of Assem. Bill No. 3323 (1979-1980 Reg. Sess.), June 17, 1980.)

Assembly Bill No. 3323 enacted Penal Code section 1203.1b in 1980, effective January 1, 1981. (Stats. 1980, ch. 555, § 1, p. 1538.) Penal Code section 1203.1b authorized the imposition of the costs of probation supervision, but not as a condition of probation. The premise of Assembly Bill No. 3323 was "that the general taxpayer should not have to bear the burden of costs associated with probation services when the probationer is financially able to contribute to these costs." (Sen. Republican Caucus, Analysis of Assem. Bill No. 421 (1981-1982 Reg. Sess.) p. 2 [amendment to Pen. Code, § 1203.1b authorizing reimbursement for the cost of presentence investigation and report].) One purpose of the legislation was to generate revenue to ease budget constraints and the financial burden of the increasing volume of criminal cases. (Governor's Off., Dept. of Legal Affairs, Enrolled Bill Rep. on Assem. Bill No. 421 (1981-1982 Reg. Sess.) Aug. 18, 1981.) Another purpose was to place greater accountability on the criminal for his or her actions. (Assemblyman William H. Ivers, letter to Governor Edmund G. Brown, Jr., Assem. Bill No. 421 (1981-1982 Reg. Sess.) Aug. 17, 1981.) A third purpose was to provide a deterrent to future crime. (Sen. Democratic Caucus, Analysis of Assem. Bill No. 3323 (1979-1980 Reg. Sess.) June 25, 1980.)

In 1987, this division acknowledged that the Legislature had effectively overruled the holding of *People v. Baker, supra,* 39 Cal.App.3d 550, as to reimbursement for probation supervision costs, by enacting Penal Code section 1203.1b. "*People* v. *Baker*[, *supra,*] 39 Cal.App.3d 550 held that a trial court lacked authority under Penal Code section 1203.1 to condition probation upon reimbursement of the costs of prosecution or of probation supervision. Thereafter, the Legislature enacted Penal Code section 1203.1b which permits the trial court to require a defendant to reimburse probation costs if the court determines, after hearing, that the defendant has the ability to pay all or a portion of such costs." (*People v. Bennett* (1987) 196 Cal.App.3d 1054, 1055-1056 [242 Cal.Rptr. 380], italics omitted.)

In summary, Penal Code section 1203.1b requires a trial court to order a probationer to pay the cost of probation supervision, provided the probationer has the ability to pay. The cost of extraditing an absconding probationer is a cost of probation supervision. Moreover, the Legislature enacted Penal Code section 1203.1b in 1980 in response to court decisions invalidating orders to pay the costs of probation supervision as a condition of probation. One of those court decisions concerned an order requiring the payment of the cost of extraditing an absconding probationer. We conclude,

based on the language óf the statute and its legislative history, that the cost of extraditing a probationer who has absconded from probation supervision is a reasonable cost of probation supervision within the meaning of Penal Code section 1203.1b.

## DISPOSITION

The judgment is affirmed.

Turner, P. J., concurred.

**MOSK, J.**—I respectfully dissent.

"[G]eneral costs of prosecuting and rehabilitating criminals" are not recoverable absent express statutory authority to the contrary. (*People v. Baker* (1974) 39 Cal.App.3d 550, 559-560 [113 Cal.Rptr. 248] (*Baker*) [power to require reimbursement to the state for costs of prosecution and of probation supervision is a function of statute]; *People v. Burnett* (1978) 86 Cal.App.3d 320 [150 Cal.Rptr. 126] (*Burnett*) [extradition costs are general costs of prosecuting and rehabilitating criminals]; *People v. Rugamas* (2001) 93 Cal.App.4th 518, 523 [113 Cal.Rptr.2d 271] [citing *Baker* for proposition that government is entitled to restitution only if it has incurred actual loss due to the crime, "excluding those general costs of prosecuting and rehabilitating criminals"].) Penal Code section 1203.1b, subdivision (a),[1] constitutes an express statutory authority provided for in *Baker*. Section 1203.1b, subdivision (a), allows a court to require a probationer to pay certain expenses, including the reasonable "cost" of "probation supervision" and the costs of conducting presentence or preplea investigations and preparing presentence or preplea reports—which activities are the type of services the probation department performs. (See, e.g., §§ 1202.8, 1203.)[2]

The term "cost of any probation supervision" is not defined and does not manifestly include the costs of extraditing or otherwise apprehending a probationer. Extradition is not the type of probation department service provided for by section 1203.1b. There is no indication in the record that either Brian Washington's probation officer or the probation department apprehended or extradited him. Instead, the record shows that the probation officer reported Brian Washington's desertion to the court and the Los Angeles County Sheriff's Department, and extradition costs were paid by the state to the district attorney's office. Costs associated with extradition, rather than being necessary to maintain probation supervision, often result in the termination of probation supervision.

---

[1] All further undesignated statutory references are to the Penal Code.

[2] Probation officers are peace officers and may engage in various activities to carry out their primary functions. (§ 830.5.)

The legislative history of section 1203.1b does not support the People's position that extradition costs may be charged to a probationer. That legislative history suggests that the "cost" of probation supervision was intended to be computed by allocating a standard amount per month to the probationer to cover the "average" monthly cost of probation services rendered. Thus, the legislative history of section 1203.1b references the "monthly" or "average" cost of probation supervision. (Cal. Youth and Adult Correctional Agency, Enrolled Bill Rep. on Assem. Bill No. 3323 (1979-1980 Reg. Sess.) July 9 and 11, 1980, p. 2 ["This measure allows the court to order a probationer to pay the average cost of probation services."]; Sen. Com. on Judiciary, Rep. on Assem. Bill No. 3323 (1979-1980 Reg. Sess.) Probation Costs, as amended May 7, 1980, pp. 1-2 [payments of reasonable cost of probation "would be made, if practicable, on a monthly basis"]; Legis. Bull., No. 14 (June 9, 1980) Probation Costs (Assem. Bill. No. 3323 (1979-1980 Reg. Sess.)) [average cost of probation supervision per probationer was $21.63 per month]; M. Steven Zehner, County Supervisors Assn. of Cal., letter to Governor Brown re Assem. Bill No. 3323 (1979-1980 Reg. Sess.), July 18, 1980 ["(section 1203.1b) limits the cost imposed to no more than the average monthly cost of probation"].) Courts, in providing for the "reasonable cost of any probation supervision," have imposed a monthly fee determined by the probation department for its supervision services. (*People v. Phillips* (1994) 25 Cal.App.4th 62, 66 [30 Cal.Rptr.2d 321] [defendant ordered to pay probation supervision fee not to exceed $20 per month]; see also *People v. Hart* (1998) 65 Cal.App.4th 902, 905-906 [76 Cal.Rptr.2d 837] [the costs of probation supervision accrue monthly].) It is unlikely that the monthly or average fee includes an extraordinary cost such as extradition costs, all or portions of which may not even be incurred by the probation department.

In enacting section 1203.1b, the Legislature responded to *Baker* by providing the statutory authority to impose specific costs on a probationer. The Legislature could have responded to *Burnett*, which precluded imposing the costs of extradition on a defendant-probationer, by providing express authority for extradition costs to be charged to a probationer, but it did not do so. The legislative history of section 1203.1b makes no mention of extradition costs or *Burnett*. There is no suggestion in the legislative history, explicit or implicit, that the Legislature intended to deal with extradition costs as a part of probation expenses that can be charged to a probationer. Had the Legislature intended to supersede *Burnett* by permitting extradition costs to be passed on to a probationer, it expressly would have so provided. (*People v. Harrison* (1989) 48 Cal.3d 321, 329 [256 Cal.Rptr. 401, 768 P.2d 1078] [Legislature "is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof"]; see also *People v. Gangemi* (1993) 13 Cal.App.4th 1790, 1797 [17 Cal.Rptr.2d

462] ["If the Legislature intended a defendant to pay for some or all of the prosecution costs, it had ample opportunity to say so in these sections [§§ 1203.1b, 1203.1c and 987.81]."].)[3]

To interpret section 1203.1b as broadly permitting sentencing courts to impose upon a probationer extradition costs as a cost of probation supervision leads to the conclusion that anything remotely related to probation is a probation cost that could be shifted to the probationer. For example, if a defendant violates his or her probation by committing another crime and police apprehend the defendant, under the People's interpretation of section 1203.1b, the costs of apprehending the defendant would be a "cost of probation supervision." Such costs, like extradition costs, are expenses incurred in connection with the State's performance of its regular duties, and they should not be viewed as statutorily authorized costs recoverable from a defendant. (*People v. Rugamas, supra,* 93 Cal.App.4th at p. 523 [government not entitled to recover costs of weapons or bullets used, gasoline for squad cars, and officers' salaries]; *Baker, supra,* 39 Cal.App.3d 550.)

Although a court has said that "[p]olicy considerations . . . support a more flexible interpretation of the [recoupment] statute" (*People v. Phillips, supra,* 25 Cal.App.4th 62, 69), our Supreme Court has reiterated that "[a] rule of strict construction of penal statutes has generally been applied in this state to criminal statutes." (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 312 [58 Cal.Rptr.2d 855, 926 P.2d 1042]; *People v. Avery* (2002) 27 Cal.4th 49, 58 [115 Cal.Rptr.2d 403, 38 P.3d 1] ["true ambiguities are resolved in a defendant's favor" if the appellate court cannot "fairly discern a contrary legislative intent"].) The defendant "must be given the benefit of every reasonable doubt as to whether the statute was applicable to him." (*In re Zerbe* (1964) 60 Cal.2d 666, 668 [36 Cal.Rptr. 286, 388 P.2d 182, 10 A.L.R.3d 840].)

Because there is no express statutory authority to impose extradition costs on a probationer, the trial court should not be able to require Brian Washington to pay extradition costs.

On August 15, 2002, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied October 2, 2002. Kennard, J., was of the opinion that the petition should be granted.

---

[3]Other states that have allowed extradition costs to be charged to a defendant as a cost of prosecution have done so pursuant to express statutory authority. (See, e.g., Minn. Stat. Ann. § 631.48 (West 2002); Kan. Stat. Ann. § 22-2724 (1995).)