1 Cal.Rptr.3d 733 (2003)
110 Cal.App.4th 353
The PEOPLE, Plaintiff and Respondent,
v.
Victor Manuel MARTINEZ, Defendant and Appellant.
No. F039200.
Court of Appeal, Fifth District.
July 9, 2003.
Rehearing Denied July 28, 2003.
Review Granted September 24, 2003.
*734 William D. Farber, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Patrick Whalen and Lee E. Seale, Deputy Attorneys General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]

*735 OPINION
WISEMAN, J.
Victor Manuel Martinez (defendant) was convicted of attempting to manufacture a controlled substance and ordered to pay a restitution fine in excess of $5,000.00 to the Department of Toxic Substances Control. On appeal, defendant argues that the fine was unauthorized. We publish to settle the question of whether the Department of Toxic Substances Control is a victim within the meaning of Penal Code section 1202.4, subdivision (f).[1] We conclude it is.

PROCEDURAL HISTORY
By information, defendant was charged with a single count of manufacturing a controlled substance (Health & Saf.Code, § 11379.6, subd. (a)). A jury found defendant not guilty of manufacturing a controlled substance, but guilty of the lesserincluded offense of attempting to manufacture a controlled substance. Defendant was sentenced to the middle term of two years and six months and ordered to pay, pursuant to section 1202.4, subdivision (f), a restitution fine in the amount of $5,402.67 to the Department of Toxic Substances Control.

FACTUAL HISTORY
On January 7, 2001, at approximately 9:30 a.m., a narcotics officer with the sheriffs department conducted surveillance on a suspected methamphetamine lab at a residence in Merced County. The officer stopped a vehicle driven by defendant that was leaving the residence. Inside the vehicle, the officer found objects commonly used in the manufacture of methamphetamine. The officer also found several receipts in defendant's possession for items associated with the manufacture of methamphetamine. Officers searched the residence and found a "super lab"a laboratory capable of producing multiple pounds of methamphetamine.

Defense
Defendant testified in his own behalf. He denied manufacturing methamphetamine, but admitted to being present at the residence on January 7, 2001. According to defendant, he had originally purchased the vehicle from another individual, but was never provided with the necessary paperwork. The prior owner therefore took the vehicle back, but did so before defendant retrieved his tools from the car. At the time defendant was stopped, he was driving the vehicle to his home, with the owner's permission, to return his tools. Defendant maintained that the other items in the vehicle did not belong to him.

DISCUSSION

I.[**]

II. Restitution fine
Defendant argues that the $5,402.67 restitution fine was unauthorized because the Department of Toxic Substances Control is not a victim within the meaning of section 1202.4, subdivision (f). "The trial `court's allocation of restitutionary responsibility must be sustained unless it constitutes an abuse of discretion or rests upon a demonstrable error of law.' [Citations.]" (People v. Draut (1999) 73 Cal.App.4th 577, 581-582, 86 Cal.Rptr.2d 469.)
Section 1202.4 states:
"(f) In every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall *736 require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court.... [¶] ... [¶]
"(k) For purposes of this section, `victim' shall include all of the following:
"(1) The immediate surviving family of the actual victim.
"(2) Any corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision, agency, or instrumentality, or any other legal or commercial entity when that entity is a direct victim of a crime."
The term "victim" in the restitution statute is given a broad and flexible meaning. (People v. Ortiz (1997) 53 Cal. App.4th 791, 796-797, 62 Cal.Rptr.2d 66; see also People v. Broussard (1993) 5 Cal.4th 1067, 1075, 22 Cal.Rptr.2d 278, 856 P.2d 1134 [word "victim" includes anyone who has sustained economic loss resulting from defendant's criminal acts].) The California Supreme Court has defined a victim, for restitution purposes, as a person who is the object of a crime. (See People v. Crow (1993) 6 Cal.4th 952, 957, 26 Cal. Rptr.2d 1, 864 P.2d 80.) A government agency qualifies as a victim entitled to restitution. (See Id. at p. 960, 26 Cal. Rptr.2d 1, 864 P.2d 80; People v. Torres (1997) 59 Cal.App.4th 1, 2-3, 68 Cal. Rptr.2d 644.)
It is well settled that a government agency is not entitled to restitution for the costs incurred in investigating and prosecuting criminal activity. (See People v. Torres, supra, 59 Cal.App.4th at pp. 4-5, 68 Cal.Rptr.2d 644 [law enforcement agency not entitled to restitution for reimbursement for cash spent purchasing illegal drugs as part of criminal investigation]; People v. Gangemi (1993) 13 Cal.App.4th 1790, 1797-1798, 17 Cal.Rptr.2d 462 [reimbursement for prosecution costs improper]; People v. Baker (1974) 39 Cal.App.3d 550, 558-560, 113 Cal.Rptr. 248.) However, apart from the general costs of prosecuting criminals, a government entity may be reimbursed for losses "resulting from unusual expenses directly incurred because of defendant's conduct." (People v. Rugamas (2001) 93 Cal.App.4th 518, 523, 113 Cal.Rptr.2d 271 [upholding restitution award to police department for medical bills it paid for injuries sustained by defendant when he was shot by police].)
Defendant maintains that the Department of Toxic Substances Control is not a direct victim of a crime. In reading the language of section 1202.4 and in considering the public policy of this state, we find the Department of Toxic Substances Control falls within the definition of a direct victim in this case.
The Department of Toxic Substances Control has statutory responsibilities to protect the public's health and safety from the release, or threatened release, of hazardous substances. (See Health & Saf.Code, § 25300, et seq. [Carpenter-Presley-Tanner Hazardous Substance Account Act].) Health and Safety Code section 25354.5 requires the Department of Toxic Substances Control to remove and dispose of hazardous substances discovered by law enforcement officials while investigating illegal drug laboratories. It provides:
"(a) Any state or local law enforcement officer or investigator or other law enforcement agency employee who, in the course of an official investigation or enforcement action regarding the manufacture of any illegal controlled substance, comes in contact with, or is aware of, the presence of a substance that the person suspects is a hazardous *737 substance at a site where an illegal controlled substance is or was manufactured, shall notify the [Department of Toxic Substances Control] for the purpose of taking removal action, as necessary, to prevent, minimize, or mitigate damage that might otherwise result from the release or threatened release of the hazardous substance....
"(b)(1) Notwithstanding any other provision of law, upon receipt of a notification pursuant to subdivision (a), the [Department of Toxic Substances Control] shall take removal action, as necessary, with respect to any hazardous substance that is an illegal controlled substance, a precursor of a controlled substance, a material intended to be used in the unlawful manufacture of a controlled substance and any container for such a material, a waste material from the unlawful manufacture of a controlled substance, or any other item contaminated with a hazardous substance used or intended to be used in the manufacture of a controlled substance. The [Department of Toxic Substances Control] may expend funds appropriated from the Illegal Drug Lab Cleanup Account created pursuant to subdivision (e) to pay the costs of removal actions required by this section. ... [¶] ... [¶]
"(e) The Illegal Drug Lab Cleanup Account is hereby created in the General Fund and the [Department of Toxic Substances Control] may expend any money in the account, upon appropriation by the Legislature, to carry out the removal actions required by this section. The account shall be funded by moneys appropriated directly from the General Fund." (See also Health & Saf.Code, § 25312.)
Here, defendant's criminal activity in the attempted manufacture of methamphetamine resulted in damage to the environment, requiring an expenditure of $5,402.67 by the Department of Toxic Substances Control for cleanup of the lab site. The cost was not part of the investigation or prosecution of defendant's criminal activity. It represents the expense necessarily incurred by the Department of Toxic Substances Control to clean up the site. The $5,402.67 expenditure resulted directly from defendant's actions and is an appropriate matter for restitution. In light of the language of section 1202.4 and the mandate in Health and Safety Code section 25354.5, we find the Department of Toxic Substances Control was a direct victim of defendant's criminal activity. (Cf. In re Johnny M. (2002) 100 Cal.App.4th 1128, 1131-1134, 123 Cal.Rptr.2d 316 [upholding restitution award that included custodial cleanup costs and employee benefit payments in case where minor damaged school property].)
Our conclusion is inescapable. Cleanup of land that has been poisoned with the toxic byproducts of methamphetamine labs requires special expertise and equipment not possessed by ordinary citizens. This is undoubtedly why the California legislature created a special department to deal with this sensitive (and expensive) task. No one can seriously dispute that land exposed to toxic substances has been damagedits property value has been significantly impacted. The landowner, an obvious direct victim, does not possess the expertise, equipment or authority to remove toxic waste generated by methamphetamine labs. The only agency that has the power to do so is the Department of Toxic Substances Control. Put in context, had this landowner performed the cleanup, there would be no question that restitution could be ordered. There is no reason to reach a different result simply because a state agency performs the same task.
*738 Our finding is further supported by the express public policy of this state. In People v. Crow, supra, 6 Cal.4th at page 958, 26 Cal.Rptr.2d 1, 864 P.2d 80, the California Supreme Court articulated the public policy behind restitution: "[R]estitution ensures `"that amends ... be made to society for the breach of the law,"' enables `people who suffer loss as a result of criminal activity [to] be compensated for those losses,' and acts `as a "deterrent to future criminality" ... and "to rehabilitate the criminal."` [Citation.]" It is also clear that "[requiring the defendant to make complete reparation to [his] victims for the harm done to them is more likely to make an impression on the defendant than simply imposing a statutory fine." (People v. Ortiz, supra, 53 Cal.App.4th at p. 796, 62 Cal.Rptr.2d 66.)
We need not detail the numerous destructive effects on the environment from the illegal operation of methamphetamine labs. In its official Web site, the Department of Toxic Substances Control notes: "The illegal manufacture of psychoactive drugs, primarily methamphetamine, has escalated dramatically since 1980. California leads the nation in the number of illicit drug laboratory seizures. Contaminants at clandestine labs range from highly volatile organic solvents and semi-volatile organic compounds, to highly corrosive inorganic acids and bases, the illicit drug itself, and other by-products." (Department of Toxic Substance Control, Clandestine Drug Lab Removals [as of Mar. 25, 2003].[3]) The costs of cleaning up the damage to our natural resources caused by the operation of these labs are ultimately borne by the taxpayers. Restitution, in the form of cleanup costs, places the burden back on those who participate in this criminal activitythose who cause harm to the environment. In short, reparation is made to society for breach of the law. We also find this form of restitution to be a significant deterrent, since the cleanup costs can be substantial. (See People v. Bernal (2002) 101 Cal.App.4th 155, 162, 123 Cal.Rptr.2d 622 [direct relation between harm and punishment gives restitution a more precise deterrent effect than a traditional fine].)
Defendant cites People v. Miller (1989) 216 Cal.App.3d 758, 265 Cal.Rptr. 77 and People v. Birkett (1999) 21 Cal.4th 226, 87 Cal.Rptr.2d 205, 980 P.2d 912 in support of his argument that the restitution award is unauthorized. We find nothing in Miller that precludes the restitution award in this case. The defendant in Miller pleaded guilty to the sale of heroin and was ordered to pay a restitution fine, a portion of which was to be paid to a county special investigations bureau. In modifying the judgment to provide that the full amount of the restitution fine be paid to the restitution fund in the State Treasury, the Miller court found that the county special investigations bureau was not a crime victim. In fact, there was no crime victim in the case. (People v. Miller, supra, 216 Cal.App.3d at pp. 760-763, 265 Cal.Rptr. 77.) In contrast here, we have the destruction of natural resources and a corresponding cost, charged to the Department of Toxic Substances Control, to restore those resources. Unlike Miller, we have a crime victim in this case.
*739 People v. Birkett, supra, 21 Cal.4th 226, 87 Cal.Rptr.2d 205, 980 P.2d 912, is similarly unpersuasive. In Birkett, the California Supreme Court held that the trial court erred in splitting a mandatory restitution award for the full amount of two of the victims' losses between the victims themselves and the insurers who had partially reimbursed them. (Id at pp. 245-247, 87 Cal.Rptr.2d 205, 980 P.2d 912.) The Court found it clear from the 1994 statutory scheme governing mandatory restitution as a condition of adult probation that "the Legislature intended to require a probationary offender, for rehabilitative and deterrent purposes, to make full restitution for all losses his crime had caused, and that such reparation should go entirely to the individual or entity the offender had directly wronged, regardless of that victim's reimbursement from other sources." (Id at p. 246, 87 Cal.Rptr.2d 205, 980 P.2d 912.) In this case, we have no insurers seeking restitution. We have only the party directly wronged by defendant's activitythe Department of Toxic Substances Control.
In sum, we find no error in the trial court's restitution award, pursuant to section 1202.4, subdivision (f), to the Department of Toxic Substances Control.

DISPOSITION
The judgment is affirmed.
WE CONCUR: DIBIASO, Acting P.J., and LEVY, J.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of Part I of the Discussion.
[1] All statutory references are to the Penal Code unless otherwise indicated.
[**] See footnote *, ante.
[3] We take judicial notice on our own motion of the Department of Toxic Substances Control's official Web site. (See Evid.Code, §§ 452, subd. (c), 459; Deschene v. Pinole Point Steel Co. (1999) 76 Cal.App.4th 33, 37, fn. 2, 90 Cal.Rptr.2d 15 [sua sponte judicial notice]; Carleton v. Tortosa (1993) 14 Cal. App.4th 745, 753 fn. 1, 17 Cal.Rptr.2d 734 [official publications of government agencies proper subjects for judicial notice].)