Filed 12/23/20  P. v. Truong CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CODY TRUONG,<br><br>    Defendant and Appellant. | D077376<br><br><br>(Super. Ct. No. SCD279053) |

APPEAL from a judgment of the Superior Court of San Diego County, Francis M. Devaney, Judge.  Affirmed.

Shaghayegh Dinata-Hanson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Daniel Rogers and Kristen Kinnaird Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

The District Attorney charged Cody Truong with evading an officer with reckless driving (Veh. Code, § 2800.2, subd. (a); count 1); two counts of

resisting an executive officer (Pen. Code,[1] § 69; counts 2, 3); two counts of vandalism over $400 (§ 549, subd. (a)(b)(1); counts 4, 5); harm to or interference with a police animal (§ 600, subd. (a); count 6); three counts of battery (§ 242; counts 7, 11, 12); unlawfully taking and driving a vehicle (Veh. Code, § 10851, subd. (a); count 8); receiving/withholding a stolen vehicle (§ 496, subd. (d); count 9); hit and run driving (Veh. Code, § 20002, subd. (a); count 10); and two counts of vandalism under $400 (§ 594, subd. (a)(b)(2)(A); counts 13, 14).  It was further alleged that Truong had served a prior prison term (§§ 667.5, subd. (b), 668).

Truong pled guilty to evading an officer with reckless driving (count 1); resisting an officer (count 2); misdemeanor harm or interference with a police animal (count 6); and unlawfully taking and driving a vehicle (count 8), in exchange for a stipulated sentence of three years four months in prison and dismissal of the remaining charges.  He also pled guilty to vandalism in a separate case for an agreed, eight-month sentence.  The agreement included a *Harvey*[2] waiver.

Per the plea agreement, the court sentenced Truong to prison for four years.  In a subsequent restitution hearing, the court ordered Truong to pay restitution to the City of San Diego (City) in the amount of $4,514.88 for damaging a patrol car.[3]

Truong appeals, contending the restitution award as to the City was unauthorized under section 1202.4.  We affirm.

---

[1]     Statutory references are to the Penal Code unless otherwise specified.

[2]     *People v. Harvey* (1979) 25 Cal.3d 754.

[3]     The court also ordered Truong to pay restitution to another victim in the amount of $1,306.  Truong does not challenge this portion of the order.

FACTUAL BACKGROUND

Because Truong pled guilty, both parties rely on the probation report for the facts of Truong's underlying crimes. Based on their agreement as to the facts and as a matter of convenience, we adopt the facts as set forth in the respondent's brief.

On October 17, 2018, at approximately 7:30 p.m. the victim, S.T., arrived at his home after work and was approached by his roommate outside the residence. His roommate told him that his son/defendant, Cody Truong, was extremely intoxicated and that he attempted to fight others inside their residence. Truong's father went inside the residence and told Truong, "Son, I think it's time to go to sleep now."

Truong became angry at his father's request and proceeded to pace back and forth inside the residence. Truong then went outside in the backyard and threw something at the glass sliding door. Truong's father heard the item strike the sliding door and asked Truong if he was okay. Truong responded by forcibly using his own head to strike his father in the face (dismissed count 7).

His father was bleeding and ran outside to the front of the residence for safety, with Truong chasing after him. Truong's father jumped on the bed of his work truck that was parked outside and called the police. He grabbed a rake and then stood on the roof of the truck to get away from Truong. Truong threw a bungy type cord at the left side of his father's face and ear causing him to fall into the bed of the truck. Truong jumped on the bed of the truck and continued to punch his father in the chest and head area (dismissed counts 11-12). Truong's father attempted to distance himself from Truong, and Truong shattered the driver's side window of his father's Range Rover (dismissed count 13), broke the mailbox (dismissed count 14), and punched a

hole in the wall located in the bathroom. The total estimated cost to repair the property damage was approximately $2,000.00.

Police arrived on scene and attempted to contact Truong standing outside of the residence on the front lawn. However, Truong flipped them off with both of his middle fingers and got into one of his father's work vehicles (2001 Toyota Tundra) and drove off with the headlights off (count 8 & dismissed count 9). The officers initiated a traffic stop, but he failed to yield and a vehicle pursuit ensued. The pursuit lasted 28 minutes and covered the neighborhoods of Tierrasanta, Kearny Mesa, Mira Mesa, Sorrento Mesa, and Sorento Valley (count 1).

During the pursuit, Truong collided with a patrol vehicle and failed to stop (count 10). Ultimately, Truong drove over police spike strips and into a dead-end street where he crashed the truck directly into S.W.'s residential fence line (count 5), whereby the vehicle became inoperable (dismissed count 4). Truong then exited the vehicle and attempted to flee on foot.

K9 officers, Sergeant Resch and Officer Harrison, were immediately behind Truong when he crashed into the fence. Officer Harrison deployed his police service canine "Kubo" after giving commands for Truong to stop. The police service canine secured two bites on Truong but was unable to subdue him. Truong had the canine pinned down by his neck and one of his legs and proceeded to punch him five to ten times hitting him in the head and face area (count 6).

Sergeant Resch and Officer Harrison moved in to restrain Truong from attacking the police canine and to take him into custody. Truong violently resisted and punched the officers several times in the face with a closed fist. Truong punched Sergeant Resch several times, hitting his left eye once resulting in a small laceration to his left eyelid and soreness to his left brow.

4

Officer Harrison sustained a small laceration across the top of his nose. The police canine "Kubo" suffered an injury to his left paw as he was limping at the scene (count 2 & dismissed count 3).

Truong was ultimately subdued and placed into the WRAP, a maximum restraint device. After being cleared from the hospital, he was transported and booked into county jail. He did not submit a statement following his arrest.

S.T. sustained several visible scratches to his right forearm and upper left back area. He also complained of pain to his mouth area and refused medical attention.

S.W.'s cost to repair the fence was estimated at $1,306.00.

## DISCUSSION

Truong challenges the trial court's ordered restitution to the City, arguing that it was unauthorized under section 1202.4 because the damage to the patrol car did not occur as a result of the hit and run charge (count 10) and the City was not the direct victim of the crime. We disagree.

Truong's plea agreement included a *Harvey* waiver wherein Truong agreed, "The sentencing judge may consider my prior criminal history and the entire factual background of the case, including any unfiled, dismissed or stricken charges or allegations or cases when granting probation, ordering restitution or imposing sentence." On January 8, 2020, the trial court sentenced Truong to the stipulated four-year prison term. The trial court also scheduled a status hearing to review restitution.

On January 29, 2020, the parties returned for a restitution hearing. Truong's counsel stated at the outset of the restitution hearing, "My understanding is that we have agreed to the stipulated restitution amount." The prosecutor agreed, "That's correct, your Honor. It's set for restitution

5

review. I filed the motion with this Court, provided documentation to the Court and Counsel. There's two copies of a proposed order, and we're stipulating to those amounts." Based on this, the trial court ordered in relevant part, "restitution in the amount of $4,514.88 to the City of San Diego . . . ." Truong's counsel made no objection.

Where a victim suffers economic losses as a function of a defendant's actions that resulted in his or her conviction, a trial court must require the defendant to make restitution as part of the sentence. (*People v. Phu* (2009) 179 Cal.App.4th 280, 283.) A victim's restitution right is to be broadly and liberally construed. (*Ibid*.)

Section 1202.4 subdivision (f), provides that, "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order." (See *People v. Martinez* (2017) 2 Cal.5th 1093, 1098 (*Martinez*) ["Application of these provisions depends on the relationship between the victim's loss and the defendant's crime."].)

The court may only impose restitution for economic losses incurred "as a result of" the defendant's criminal conduct. (§ 1202.4, subd. (f).) In other words, restitution may be imposed in such cases only to the extent the defendant's criminal conduct played a "substantial factor" in causing the victim's economic loss. (*People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1321-1324 [victim losses were the direct result of the burglary, and the defendant's possession of the stolen property was also a substantial factor in causing the victim's loss].) To be a substantial factor, the defendant's criminal conduct must be more than a "trivial or remote" factor contributing

6

to the victim's loss, but it need not be the "sole" cause of the loss. (*People v. Sanchez* (2001) 26 Cal.4th 834, 845; *People v. Fromuth* (2016) 2 Cal.App.5th 91, 101.)

We review a trial court's restitution order for an abuse of discretion. (*People v. Giordano* (2007) 42 Cal.4th 644, 663.) In doing so, we draw all reasonable inferences in favor of the trial court's order and will affirm it if there is substantial evidence to support it. The statute does not require "any particular kind of proof" and "[n]o abuse of discretion will be found where there is a rational and factual basis for the amount of restitution ordered." (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542-1543.)

"[W]hen the legal basis for a restitution award is under challenge," this court independently reviews "the legality of the restitution award in light of the applicable statutes and any relevant decisional law." (*People v. Brunette* (2011) 194 Cal.App.4th 268, 277; *People v. Williams* (2010) 184 Cal.App.4th 142, 146 ["[W]hen the propriety of a restitution order turns on the interpretation of a statute, a question of law is raised, which is subject to de novo review on appeal"].)

Truong challenges the restitution award to the City on two grounds. First, he urges us to follow *Martinez*, *supra*, 2 Cal.5th 1093 and conclude count 10 for hit and run could not give rise to a restitution award in favor of the City. However, *Martinez* does not support Truong's position in the instant matter. In fact, it supports the People's argument that restitution was authorized.

In *Martinez*, the defendant was convicted of violating Vehicle Code section 20001, often referred to as the "hit and run statute." (*Martinez*, *supra*, 2 Cal.5th at p. 1097.) The defendant was ordered to pay the victim injured in the accident $425,654.63 as restitution for the victim's injuries.

7

(*Ibid.*) Our high court addressed whether the restitution award was authorized under the statutes requiring a convicted felon to pay restitution for economic loss the victim incurred " 'as a result of the commission of a crime' " (§ 1202.4, subd. (a)(1)) or " 'as the result of the defendant's criminal conduct' " (§ 1202.4, subd. (f)(3)). (*Martinez*, at pp. 1097-1098.) In doing so, the court explained that a Vehicle Code section 20001 violation is " 'more accurately described as fleeing the scene of an injury accident.' " (*Martinez*, at p. 1102.) As such, the court rejected the direct restitution award, concluding that restitution for injury arising out of a violation of Vehicle Code section 20001 is limited to the "losses resulting from the defendant's crime: that is, flight from the scene of the accident without identifying himself or herself, rendering aid, or otherwise fulfilling the statutory requirements." (*Martinez*, at p. 1107.) Further, the court emphasized "[s]ection 1202.4 does not, however, permit courts to order direct victim restitution for losses that occur as a result of an underlying accident that involves no criminal wrongdoing." (*Ibid.*; see *id.* at p. 1103 ["Restitution for losses incurred 'as a result of the commission of a crime' (§ 1202.4, subd. (a)) includes losses incurred as a result of the defendant's unlawful flight from the scene of the accident in which he or she was involved, but not losses solely as a result of the accident itself."].)

Here, Truong asserts that he is in the same situation as the defendant in *Martinez*. Accordingly, he argues that the court could not have ordered victim restitution for the damage to the patrol car for his violation of Vehicle

Code section 20002.[4]  However, as the People point out, in *Martinez*, the court was only concerned with the violation of Vehicle Code section 20001. Here, Truong was charged with and pled guilty to more than a hit and run violation.  Indeed, Truong pled guilty to recklessly evading a police officer with wanton disregard for safety, in violation of Vehicle Code section 2800.2, subdivision (a).  That subdivision prohibits the flight from or attempts to elude a pursuing law enforcement officer when "the pursued vehicle is driven in a willful and wanton disregard for the safety of persons or property." (Veh. Code, § 2800.2, subd. (a).)  In the instant matter, Truong led officers on a 28 minute pursuit, during which, he "collided with a patrol car and failed to stop."  Further, Truong was acting erratically, damaging his father's property, and hitting his father.  He refused to comply with instructions from the police, stole his father's car, and led officers in a vehicle pursuit.  This reckless conduct was a substantial factor in the collision.  Restitution in favor of the City therefore was authorized.  (See *People v. Holmberg*, *supra*, 195 Cal.App.4th at pp. 1321-1324; *People v. Sanchez*, *supra*, 26 Cal.4th at p. 845; *People v. Fromuth*, *supra*, 2 Cal.App.5th at p. 101.)

Moreover, *Martinez* supports victim restitution under the facts of the instant matter.  As the California Supreme Court noted, "victim restitution is available when the victim's losses are caused by conduct that does, in fact, constitute a crime." (*Martinez*, *supra*, 2 Cal.5th at p. 1105.)  The court

---

4      The fact that Truong was charged with a violation of Vehicle Code section 20002 and the defendant in *Martinez* was charged with a violation of Vehicle Code section 20001 is not of the moment.  The former involves a defendant leaving the scene of an accident where only property is damaged. (See Veh. Code, § 20002, subd. (a).)  The latter concerns a defendant leaving the scene of an accident in which someone (besides the defendant) is injured. (See Veh. Code, § 20001, subd. (a).)  The criminal act in both statutes is fleeing the scene of the accident.

further observed that "a court may order restitution for the losses incurred as a result of the mean by which the defendant committed the offense." (*Id.* at pp. 1105-1106.) Here, part of Truong's offense of recklessly evading a police officer with wanton disregard for safety involved him crashing into a patrol car. *Martinez* does not prohibit a court from awarding victim restitution based on Truong's criminal conduct resulting in damage to the patrol car. (*Id.* at p. 1106 ["So, for example, if a burglar breaks a window to enter a home, he or she may be ordered to pay for the broken window in victim restitution, even though the burglary statute requires the prosecution to prove only that the defendant entered the house with the intent to commit a felony. (See Pen. Code, § 459.) If the burglar happens to have committed the prohibited entry by some means that causes damage to the home, a trial court certainly can—and must—take the damage into account in ordering restitution under section 1202.4, subdivision (f)."].)

Second, Truong argues the restitution award to the City was not authorized because the City is not a "direct victim" of the crime. To this end, he argues the damage to the patrol car was simply a cost the City incurred in the course of the police performing its duty to investigate a criminal activity, and thus, the City cannot be considered a direct victim for purposes of victim restitution. We reject this contention.

Section 1202.4, subdivision (k)(2), defines victim to include any "government, governmental subdivision, agency, or instrumentality, or any other legal or commercial entity when that entity is a direct victim of a crime." As our Supreme Court observed, however, " 'public agencies are not directly "victimized" for purposes of restitution under Penal Code section 1202.4 merely because they spend money to investigate crimes or

10

apprehend criminals.' [Citation.]" (*People v. Martinez* (2005) 36 Cal.4th 384, 393, fn. 1.) Here, the damage to the patrol vehicle was not incurred during the regular performance of an officer's duties. Even though the City could not be compensated for the cost of gasoline or the personnel costs of the pursuit, Truong's collision with the patrol car was not during the regular course of duties. (See *People v. Rugamas* (2001) 93 Cal.App.4th 518, 521-523 [medical costs of treating defendant not ordinary law enforcement cost]; *In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1134 [labor costs outside of regular duties].) Truong's criminal conduct in willfully evading law enforcement officers included colliding with the patrol car. The officer would not have had damage to his vehicle but for Truong's criminal behavior. As the owner of the patrol car, the City was the direct victim of Truong's criminal conduct.

For the above reasons, the restitution award to the City was authorized.

DISPOSITION

The order is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:


HALLER, J.


GUERRERO, J.

11