Filed 9/22/20  P. v. Webb CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RUSSELL ROBERT WEBB,<br><br>    Defendant and Appellant. | 2d Crim. No. B300739<br>(Super. Ct. No. KA101455)<br>(Los Angeles County) |

Russell Robert Webb appeals the trial court's order revoking his probation and imposing a previously suspended six-year prison term for first degree automated teller machine (ATM) robbery (Pen. Code,[1] § 211).  Appellant contends the court abused its discretion in revoking probation and declining to reinstate probation.  We affirm.

## FACTS AND PROCEDURAL HISTORY

Because appellant pleaded no contest prior to a preliminary hearing, the relevant facts are derived from the probation report.

_____

[1] All statutory references are to the Penal Code unless otherwise stated.

In March 2013, appellant and codefendant Ephraim Cho were members of the Hellside criminal street gang. Cho was romantically interested in "Kathy," who was in a relationship with appellant's friend, victim Benjamin Chen. Kathy told Chen that Cho was "actively pursu[ing] her" and "want[ed] them to end their relationship."

On March 13, appellant called Chen and told him to meet him at a church and that "if he did not come out and talk to them, things could get worse." When Chen approached the church, he saw Kathy speaking to appellant and codefendant David Han, a member of the Hanzkook Boyz criminal street gang. Cho drove up in a vehicle and demanded that Chen get in. Chen got into the front passenger seat and Han got in the back seat. Cho identified himself as a Hellside member, pointed a gun at Chen, and threatened to shoot him. Cho also pulled out a knife and threatened to stab Chen.

Cho drove Chen to a parking garage, continued to threaten him, and demanded money from him. Cho then drove Chen to Chen's house, where appellant got into the vehicle. Cho drove Chen, Han and appellant to an apartment complex. Appellant initially stayed in the car while Cho and Han took Chen to an apartment within the complex. Inside the apartment, Cho continued to threaten Chen and punched him in the face. Appellant subsequently entered the apartment. While appellant was present, Cho kicked Chen in the face and stomped on his ankle. Cho pulled out a knife, held it against Chen's neck, and threatened to stab him.

Cho left the apartment and went to pick up Kathy while appellant and Han stayed with Chen. Appellant and Han told Chen he should not leave because it would "make matters worse." Cho subsequently returned to the apartment and threatened to shoot Chen if he did not give him money.

2

Han drove Cho and Chen to Chen's home, where Chen retrieved his ATM cards. Han then drove Chen to several banks, where Chen withdrew a total of $2,400. Chen gave the money to Han.

Appellant was subsequently charged with kidnapping to commit another crime (§ 209, subd. (b)(1)), two counts of first degree ATM robbery (§ 211), and second degree robbery (§ 211). It was further alleged that a principal (Cho) personally used a deadly weapon in committing the kidnapping (§ 12022, subd. (b)(1)), and that the robberies were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)).

On March 27, 2014, appellant pleaded no contest to one count of first degree ATM robbery. The trial court sentenced him to the upper term of six years in state prison, suspended execution of the sentence, and placed him on five years of formal felony probation. The terms and conditions of probation required appellant to, among other things, report to probation within 72 hours of his release, "keep [his] probation officer advised of [his] residence and telephone number at all times," and "obey all laws and . . . all orders, rules, and regulations of the probation department and of the court." The court asked appellant if he accepted these terms and conditions, and appellant replied in the affirmative.

Appellant initially reported to probation every month as ordered by the probation department, but stopped reporting after March 2, 2015. On June 29, 2015, appellant's probation was revoked and a bench warrant for his arrest was issued.

In May 2019, appellant was discovered to be in Hawaii and was extradited to California. The court set the matter for a probation violation hearing and ordered a supplemental probation report. The supplemental probation report, prepared by Deputy Probation Officer Sean Iverson, stated among other

3

things that "since his grant [of probation], [appellant] has sustained five misdemeanor arrests and convictions for theft in Hawaii.  Based on the frequency of arrests, it appears that [appellant] may have fled California and had been residing in Hawaii for an extended period of time.  [¶]  Despite [appellant's] young age and no prior engagement in the criminal justice system, he was complying with the orders of the court and probation department.  [Appellant] was reporting monthly, sometimes twice a month, through March 2015.  From April 2015, [appellant's] whereabouts had been unknown, which as previously noted, he was in the state of Hawaii."

The report further stated that "[appellant] has shown to have an increasing propensity for engaging in criminal activity . . . [and] appears to have developed a disregard for the judicial system as well as for the public, which is cause for concern. . . . [H]e appears to be a flight risk based on his recent criminal activity in the state of Hawaii.  [¶]  If found in violation of probation, it is imperative that he be held accountable, while ensuring the safety and well being of the public."  The report "recommended that [appellant] be found in violation of probation, that probation be revoked, and [that the] previously pronounced sentence be placed in full force and effect."

Officer Iverson testified for the prosecution at the probation violation hearing.  Probationers are "typically" required to check in with the probation department once every month, either in person at the probation department office kiosk or "in [the] field."  After reviewing appellant's records, Officer Iverson determined that the last time he checked in with probation was March 2, 2015, and that since then the probation department had not heard anything from appellant and had no knowledge of his whereabouts until he was found in Hawaii.  Officer Iverson also searched available databases to determine if appellant had been

4

convicted of any crimes since he last reported to probation and discovered he had been convicted of theft in Hawaii on July 9, 2015, June 15, 2016, November 15, 2016, and May 2, 2019. Records of the five convictions were admitted into evidence.

Appellant, against the advice of his attorney, testified on his own behalf. He admitted failing to report to probation after March 2, 2015, but purported to excuse this failure by offering that his identification and all of his other belongings were stolen while he was in Hawaii and that he "didn't have the means to fly back." He also claimed he "had no probation officer to call because he said he retired" and that in committing the thefts he "did what [he] felt like [he] had to do to eat and . . . get by by [him]self." He also offered that prior to going to Hawaii he reported to probation every month and claimed he "got permitted by the supervisor at the time to travel and work there." Because of this, he "couldn't receive any help or guidance" on how to get back to California and added, "my reason I'm back now is because I was extradited." Appellant offered that "given the chance to be reinstated on my probation, I would check in just as normal."

At the conclusion of the hearing, appellant's attorney did not dispute that appellant had absconded from probation or that since doing so he had been convicted of five separate theft offenses. Counsel argued, however, that appellant had committed the thefts in Hawaii "as a matter of necessity."

The trial court found appellant in violation of probation, revoked probation, and ordered execution of the previously imposed six-year prison sentence. The court reasoned: "[Appellant] fled the jurisdiction of the court. [He] did not have permission to travel out of the state. [His] statement to this court was an admission of his violation. [He] admitted to violating the law not on one occasion, two occasions, three occasions, but five different occasions. [Appellant's] explanation

5

was completely hollow and false to this court. . . . I believe the testimony to this court was an effort to try and avoid any potential sentence in this matter."

## DISCUSSION

Appellant contends the court abused its discretion in revoking probation because the evidence presented at the probation violation hearing was insufficient to establish that he violated his probation. He complains the court "found that appellant violated probation by fleeing the jurisdiction of the court, moving to Hawaii without obtaining permission, and by failing to obey all laws . . . without taking judicial notice of any of the imposed probation conditions, and the prosecution never proved that any of these conditions was [*sic*] imposed." Although the supplemental probation report reflects that appellant violated the conditions of his probation that required him to obey all laws and the rules and regulations of the probation department, he notes that the report was not offered into evidence at the probation violation hearing and claims he "had never been ordered to remain within the jurisdiction of the court or obtain permission before moving" and that "[t]here was also no evidence establishing that he did not obtain permission before moving." We are not persuaded.

Section 1203.2, subdivision (a) authorizes the court to revoke probation after proper notice and a hearing if "the court, in its judgment, has reason to believe from the report of the probation or parole officer or otherwise that the person has violated any of the conditions of their supervision . . . *or has subsequently committed other offenses, regardless of whether the person has been prosecuted for those offenses*." (Italics added.) "'As the language of section 1203.2 would suggest, the determination whether to . . . revoke probation is largely discretionary.' [Citation.] '[T]he facts supporting revocation of

6

probation may be proven by a preponderance of the evidence.' [Citation.]" (*People v. Galvan* (2007) 155 Cal.App.4th 978, 981-982.)

"[W]here the trial court was required to resolve conflicting evidence, review on appeal is based on the substantial evidence test. Under that standard, our review is limited to the determination of whether, upon review of the entire record, there is substantial evidence of solid value, contradicted or uncontradicted, which will support the trial court's decision. In that regard, we give great deference to the trial court and resolve all inferences and intendments in favor of the judgment. Similarly, all conflicting evidence will be resolved in favor of the decision." (*People v. Kurey* (2001) 88 Cal.App.4th 840, 848-849.)

Even without the benefit of the supplemental probation report or other parts of the record establishing the conditions of appellant's probation, the court was presented with sufficient evidence at the hearing to find that appellant had violated probation. It is undisputed that appellant was on *supervised* probation. At the probation violation hearing, Officer Iverson testified that supervised probationers are typically required to "check in" with the probation department once a month. The officer also testified that the probation department's records demonstrated that appellant had last checked in on March 2, 2015. For over four years, the probation department was unaware of his whereabouts. Moreover, appellant admitted in his sworn testimony that prior to March 2015, he had reported to the probation department at least once a month. He also admitted that he failed to report to probation while he was in Hawaii. He claimed that he once contacted the probation department while he was in Hawaii, but that claim was contradicted by Officer Emerson's testimony. The court could thus properly find, by a preponderance of the evidence, that

7

appellant had absconded from probation, i.e., that he "fled the jurisdiction of the court" and "did not have permission to travel out of state." It would appear manifest that "[t]he probation officer in California could not supervise a probationer who had deserted probation and fled to another state." (*People v. Washington* (2002) 100 Cal.App.4th 590, 593.)

Moreover, the evidence presented at the probation violation hearing established that during the four years appellant was in Hawaii, he was convicted of five separate thefts. The undisputed fact that appellant committed additional crimes while on probation is sufficient by itself to support the revocation of probation. "[O]ne of the most common probation conditions [is] the implicit condition to obey all laws." (*People v. Hall* (2017) 2 Cal.5th 494, 502.) "The proscription against criminal conduct is so basic it is a condition of probation even if it is not expressly set forth in the order." (*People v. Thrash* (1978) 80 Cal.App.3d 898, 902.) Indeed, section 1203.2, subdivision (a) makes clear that the commission of additional offenses while on probation is sufficient by itself to warrant a revocation of probation. It is thus irrelevant whether the evidence at the probation violation hearing established that the requirement to "obey all laws" was an express condition of appellant's probation.

*In re Marco A.* (1996) 50 Cal.App.4th 1516, which appellant offers in support of his claim, is plainly inapposite. In that case, the prosecution filed a unitary Welfare and Institutions Code sections 602 and 777 petition alleging assault with a deadly weapon and felonious battery. At the time of the alleged offenses, the minor was absent without leave (AWOL) from a prior placement but this fact was not alleged in the unified petition. At the hearing on the petition, the arresting officer testified that the minor had admitted possessing a knife since he "AWOL'ed." At the end of the hearing, the juvenile court found the minor acted

8

in self-defense and found the allegations in the petition not true. (*Marco A.*, at p. 1519.) The prosecutor then sought to amend the petition to include a new allegation that the minor violated the terms of his probation because he admitted he was AWOL. The court permitted the amendment, found the allegation true beyond a reasonable doubt, and committed the minor to the California Youth Authority. (*Id.* at p. 1520.) In reversing, the court of appeal found that although the minor admitted he was AWOL, there was no evidence presented at the hearing as where he had been committed or under what authority he was committed. The court reasoned that "[t]hese facts undoubtedly were readily available in [the minor's] own file. No one, however, offered the file and no request was made the court take judicial notice of it." (*Id.* at p. 1521.)

Here, Officer Iverson testified that appellant had stopped reporting to probation and that thereafter his whereabouts were unknown. In his sworn testimony, appellant also admitted that he had failed to report to probation for over four years, yet claimed this failure was not willful. Moreover, it is undisputed that during those four years appellant committed numerous additional crimes. The court was thus presented with all the evidence it needed to find appellant had violated his probation.

We also reject appellant's claim that the court abused its discretion in declining to reinstate probation rather than ordering execution of the previously-imposed prison sentence. The trial court is vested with broad discretion in determining whether to reinstate probation following revocation or probation. (*People v. Jones* (1990) 224 Cal.App.3d 1309, 1315.) "'[O]nly in a very extreme case should an appellate court interfere with the discretion of the trial court in the matter of denying or revoking probation.'" (*People v. Rodriguez* (1990) 51 Cal.3d 437, 443.) This plainly is not such a case. Appellant's claim to the contrary

9

downplays the significance of the facts that he absconded from probation supervision for over four years and committed numerous additional crimes.  His poor performance on probation was an aggravating factor (Cal. Rules of Court, rule 4.414(b)(2)), and a single aggravating factor is sufficient to justify the denial of probation.  (*People v. Mehserle* (2012) 206 Cal.App.4th 1125, 1158.)  Moreover, the court is presumed to have considered all the relevant criteria relating to the grant or denial or probation. (Cal. Rules of Court, rule 4.409.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

YEGAN, Acting P.J.

TANGEMAN, J.

10

Jack P. Hunt, Judge
Superior Court County of Los Angeles

_____


Jenny M. Brandt, under appointment by the Court of
Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief
Assistant Attorney General, Susan Sullivan Pithey, Senior
Assistant Attorney General, Michael R. Johnsen, Supervising
Deputy Attorney General, Kristen J. Inberg, Deputy Attorney
General, for Plaintiff and Respondent.